EDP:SP/VC/JV

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -                              23 CR 278 (S-2) (NRM)

SYED RUBEL AHMED,
ANZU KHAN and
SULTANA RAZIA,

    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

MEMORANDUM OF LAW IN SUPPORT OF
THE GOVERNMENT'S MOTIONS IN LIMINE

JOSEPH NOCELLA, JR.
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

Stephanie Pak
Vincent Chiappini
John Vagelatos
Assistant U.S. Attorneys
    (Of Counsel)

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT** .......................................................................... 1

**RELEVANT BACKGROUND** ............................................................................ 3

**ARGUMENT** ......................................................................................................... 4

I.  The Defendants' Out-of-Court Statements Are Admissible for Their Truth When Offered by the Government and Inadmissible When Offered by the Defendant .................. 4

II.  The Court Should Admit Statements Made by the Defendants' Co-Conspirators ....... 8

III.  The Court Should Admit Certain Out-of-Court Statements by John Doe-1 ............... 12

IV.  John Doe-1's Prior Consistent Statements Are Admissible as Non-Hearsay ............. 17

V.  The Defendants Should Be Precluded from Suggesting Evidence Was Unlawfully Obtained .......................................................................................................... 21

VI.  Cross-Examination, Statements, and Arguments Concerning John Doe-1's Criminal History, Prior Acts and Prior Conflicts with the Defendant and Others Should Be Limited 23

VII.  The Defendant Should Not Be Permitted to Cross-Examine Witnesses with Non-Verbatim Reports That Have Not Been Signed or Adopted by the Witness or Suggest to the Jury that the Contents of an Investigative Report Are Statements of the Witness ............... 29

VIII.  Self-Authenticating Records Are Admissible Without a Custodial Witness.............. 31

IX.  The Government Will Seek to Present Evidence to the Jury Through a Publication Witness............................................................................................................. 35

X.  The Court Should Preclude Evidence and Arguments That Are Irrelevant, Unfairly Prejudicial or Invite Jury Nullification .................................................................. 40

XI.  Razia Should Not Be Permitted to Argue Self-Defense ........................................... 47

XII.  Argument Regarding Absent Co-Conspirators Should Be Strictly Limited............... 49

XIII.  The Court Should Preclude Evidence or Argument Challenging the Government's Charging Decisions as to the Defendants .............................................................. 52

XIV.  The Defendant Should Be Ordered to Disclose Discovery, Witness Lists, and Trial Exhibits ........................................................................................................... 55

**CONCLUSION** ...................................................................................................... 58

# TABLE OF AUTHORITIES

Page(s)

Cases

Bank of Nova Scotia v. United States,
  487 U.S. 250 (1988)..................................................................................................... 36

Giglio v. United States,
  405 U.S. 150 (1972)....................................................................................................... 1

In re United States,
  945 F.3d 616 (2d Cir. 2019)........................................................................................ 42

Melendez-Diaz v. Massachusetts,
  557 U.S. 305 (2009)..................................................................................................... 32

Old Chief v. United States,
  519 U.S. 172 (1997)..................................................................................................... 39

Palermo v. United States,
  360 U.S. 343 (1959)..................................................................................................... 30

Palmieri v. Defaria,
  88 F.3d 136 (2d Cir. 1996).......................................................................................... 10

Phoenix Assocs. III v. Stone,
  60 F.3d 95 (2d Cir. 1995) ....................................................................................... 6, 18

Shannon v. United States,
  512 U.S. 573 (1994)............................................................................................... 46, 47

Sparf v. United States,
  156 U.S. 51 (1895)....................................................................................................... 42

Stephen v. Hanley,
  No. 03-CV-6226 (KAM)(LB), 2009 WL 1471180 (E.D.N.Y. May 21, 2009) ........................ 26

Town of Newton v. Rumery,
  480 U.S. 386 (1987)..................................................................................................... 52

United States v. Acarino,
  408 F.2d 512 (2d Cir. 1969)........................................................................................ 25

United States v. Adelekan,
  567 F. Supp. 3d 459 (S.D.N.Y. 2021)............................................................................ 9

United States v. Agostini,
  280 F. Supp. 2d 260 (S.D.NY. 2003)........................................................................... 27

United States v. Aguilar,
  No. 20-CR-390 (ENV), 2024 WL 3629471 (E.D.N.Y. July 15, 2024) .......................... 56, 57

United States v. Allums,
  No. 15-CR-153 (VSB), 2018 WL 2128372 (S.D.N.Y. May 9, 2018) .................................... 36

United States v. Almonte,
  956 F.2d 27 (2d Cir. 1992)..................................................................................... 29, 31

United States v. Ayala-Vieyra,
  No. 21-1177, 2022 WL 190756 (6th Cir. Jan. 21, 2022)............................................... 37

United States v. Ayers,
   No. 20-CR-239 (BMC), 2024 WL 1158686 (E.D.N.Y. Mar. 18, 2024) .................................. 57
United States v. Baker,
   923 F.3d 390 (5th Cir. 2019) ..................................................................................... 36
United States v. Bakhtiari,
   913 F.2d 1053 (2d Cir. 1990)..................................................................................... 40
United States v. Battaglia,
   No. 05-CR-774 (KMW), 2008 WL 144826 (S.D.N.Y. Jan. 15, 2008)............................... 41, 44
United States v. Bellomo,
   176 F.3d 580 (2d Cir. 1999)....................................................................................... 10
United States v. Blackwell,
   853 F.2d 86 (2d Cir. 1988)......................................................................................... 46
United States v. Borrero,
   No. 13 CR. 58 KBF, 2013 WL 6020773 (S.D.N.Y. Nov. 1, 2013)....................................... 53
United States v. Bout,
   651 Fed. App'x 62 (2d Cir. 2016)................................................................................ 32
United States v. Brown,
   254 F.3d 454 (2d Cir. 2001)....................................................................................... 14
United States v. Butler,
   485 F.3d 569 (10th Cir. 2007) .................................................................................... 48
United States v. Cardascia,
   951 F.2d 474 (2d Cir.1991)........................................................................................ 14
United States v. Demosthene,
   334 F. Supp. 2d 378 (S.D.N.Y. 2004)........................................................................... 50
United States v. Denton,
   944 F.3d 170 (4th Cir. 2019) ..................................................................................... 36
United States v. Desinor,
   525 F. 3d 193 (2d Cir. 2008)...................................................................................... 48
United States v. Dunnican,
   961 F.3d 859 (6th Cir. 2020) ..................................................................................... 33
United States v. Díaz-Colón,
   651 F. Supp. 3d 468 (D.P.R. 2023).............................................................................. 42
United States v. Edwards,
   101 F.3d 17 (2d Cir. 1996)......................................................................................... 41
United States v. Farhane,
   634 F.3d 127 (2d Cir. 2011)....................................................................................... 54
United States v. Fawwaz,
   691 F. App'x 676 (2d Cir. 2017) ................................................................................... 7
United States v. Flaharty,
   295 F.3d 182 (2d Cir. 2002)....................................................................................... 24
United States v. Flores,
   945 F.3d 687 (2d Cir. 2019)................................................................................... 18, 19
United States v. Forney,
   No. 24-CR-146 (KAM), 2025 WL 2208298 (E.D.N.Y. Aug. 4, 2025).................................. 33
United States v. Fox,
   No. 23-CR-227 (NGG), 2025 WL 2076664 (E.D.N.Y. July 23, 2025)............................ 10, 57

United States v. Gagliardi,
    506 F.3d 140 (2d Cir. 2007)..................................................................................... 32
United States v. Geaney,
    417 F.2d 1116 (2d Cir. 1969)................................................................................. 8, 9
United States v. Goldberg,
    401 F.2d 644 (2d Cir. 1968)..................................................................................... 38
United States v. Gonzalez,
    399 F. App'x 641 (2d Cir. 2010) ........................................................................... 7, 8
United States v. Graham,
    No. 14-CR-500 (NSR), 2015 WL 6161292 (S.D.N.Y. Oct. 20, 2015).................................... 14
United States v. Grant,
    No. 05-CR-1192 (NRB), 2008 WL 678553 (Mar. 11, 2008) .............................................. 9, 11
United States v. Harris,
    491 F.3d 440 (D.C. Cir. 2007)....................................................................... 41, 44, 45
United States v. Heslop,
    225 F.3d 647 (2d Cir. 2000)..................................................................................... 46
United States v. Hill,
    658 F. App'x 600 (2d Cir. 2016) ............................................................................... 7
United States v. Hill,
    No. 12-CR-214 (KAM), 2014 WL 198813 (E.D.N.Y. Jan. 14, 2014) ...................................... 53
United States v. Ho,
    984 F.3d 191 (2d Cir. 2020)..................................................................................... 38
United States v. Hossain,
    No. 19-CR-606 (SHS), 2021 WL 4272827 (S.D.N.Y. Sept. 21, 2021)..................................... 24
United States v. Howard,
    998 F.2d 42 (2d Cir. 1993)...................................................................................... 22
United States v. Hsia,
    No. 98-0058 (PLF), 2000 WL 195067 (D.D.C. Jan. 21, 2000) ........................................... 56
United States v. Inniss,
    No. 18-CR-134 (KAM), 2019 WL 6999912 (E.D.N.Y. Dec. 20, 2019) .................................... 50
United States v. Jackson,
    180 F.3d 55 (2d Cir. 1999)....................................................................................... 7
United States v. Jackson,
    726 F.2d 1466 (9th Cir.1984) .................................................................................. 48
United States v. James,
    712 F.3d 79 (2d Cir. 2013)...................................................................................... 25
United States v. Johnson,
    507 F.3d 793 (2d. Cir. 2007)..................................................................................... 7
United States v. Jones,
    299 F.3d 103 (2d Cir. 2002)................................................................................. 13, 14
United States v. Kerley,
    784 F.3d 327 (6th Cir. 2015) ................................................................................... 38
United States v. Komasa,
    767 F.3d 151 (2d Cir. 2014)..................................................................................... 32
United States v. Konstantinovskiy,
    No. 19-CR-408 (MKB), 2024 WL 3360379.................................................................. 12

United States v. Kwong,
   69 F.3d 663 (2d Cir. 1995) ................................................................................ 40

United States v. Lasko,
   146 F. App'x 530 (2d Cir. 2005) ....................................................................... 38

United States v. Lawes,
   292 F.3d 123 (2d Cir. 2002) .............................................................................. 25

United States v. Lee,
   660 F. App'x 8 (2d Cir. 2016) ........................................................................... 38

United States v. Leonardi,
   623 F.2d 746 (2d Cir. 1980) ............................................................... 29, 30, 31

United States v. Lights,
   No. 15-CR-721 (RWS), 2016 WL 7098633 (S.D.N.Y. Dec. 5, 2016) .............. 21

United States v. Loera,
   No. 09-CR-466 (BMC), 2018 WL 2744701 (E.D.N.Y. June 7, 2018) ............... 54

United States v. Lyttle,
   460 F. App'x 3 (2d Cir. 2012) ............................................................................. 6

United States v. Malpeso,
   115 F.3d 155 (2d Cir. 1997) .............................................................................. 45

United States v. Marin,
   669 F.2d 73 (2d Cir. 1982) .................................................................................. 6

United States v. McDaniel,
   398 F.3d 540 (6th Cir. 2005) ............................................................................... 6

United States v. McMahon,
   No. 21-CR-265 (PKC), 2024 WL 896838 n.12 (E.D.N.Y. Mar. 1, 2024) ..... 7, 36, 39

United States v. Mejia-Valez,
   855 F. Supp. 607 (E.D.N.Y. 1994) .................................................................... 13

United States v. Menendez,
   793 F. Supp. 3d 511 (S.D.N.Y. 2025) ............................................................... 36

United States v. Miller,
   626 F.3d 682 (2d Cir. 2010) .............................................................................. 40

United States v. Miller,
   641 F. Supp. 2d 161 (E.D.N.Y. 2009) ......................................................... 41, 42

United States v. Napout,
   No. 15-CR-252 (PKC), 2017 WL 6375729 (E.D.N.Y. Dec. 12, 2017) ............. 56

United States v. Naumovski,
   No. 20-CR-384 (WFK), 2023 WL 5806171 (E.D.N.Y. Sept. 7, 2023) ............. 53

United States v. Odiase,
   788 F. App'x 760 (2d Cir. 2019) ......................................................................... 6

United States v. Oguns,
   921 F.2d 442 (2d Cir. 1990) .............................................................................. 10

United States v. Otufale,
   740 F.Supp.3d 233 (E.D.N.Y. 2024) ................................................................ 33

United States v. Paccione,
   949 F.2d 1183 (2d Cir. 1991) ....................................................................... 41, 44

United States v. Paul,
   110 F.3d 869 (2d Cir. 1997) .............................................................................. 41

v

United States v. Purcell,
   967 F.3d 159 (2d Cir. 2020) ................................................................... 18, 20
United States v. Ramsey,
   No. 21-CR-495 (ARR), 2023 WL 2523193 (E.D.N.Y. Mar. 15, 2023) ........................ 7, 52, 53
United States v. Ray,
   No. 20-CR-110 (LJL), 2022 WL 813942 (S.D.N.Y. Mar. 16, 2022) ..................................... 19
United States v. Reese,
   933 F. Supp. 2d 579 (S.D.N.Y. 2013) .................................................................. 50
United States v. Regan,
   103 F.3d 1072 (2d Cir. 1997) .............................................................................. 50
United States v. Romanello,
   No. 22-CR-194(EK), 2023 WL 8283435 (E.D.N.Y. Nov. 27, 2023) ...................................... 30
United States v. Russo,
   302 F.3d 37 (2d Cir. 2002) ................................................................................ 5
United States v. Sackett,
   598 F.2d 739 (2d Cir. 1979) .............................................................................. 34
United States v. Salman,
   No. 24-CR-00206 (NCM), 2025 WL 3089279 (E.D.N.Y. Nov. 5, 2025) .............................. 22
United States v. Salameh,
   152 F.3d 88 (2d Cir. 1998) ............................................................................... 25
United States v. Saneaux,
   365 F. Supp. 2d 488 (S.D.N.Y. 2005) .................................................................. 11
United States v. Santiago,
   199 F. Supp. 2d 101 (S.D.N.Y. 2002) .................................................................. 9
United States v. Sebastian,
   497 F.2d 1267 (2d Cir. 1974) ............................................................................ 22
United States v. Semensohn,
   421 F.2d 1206 (2d Cir. 1970) ............................................................................ 25
United States v. Sepulveda,
   15 F.3d 1161 (1st Cir. 1993) .............................................................................. 47
United States v. Smothers,
   No. 20-CR-213 (KAM), 2023 WL 348870 (E.D.N.Y. Jan. 20, 2023) .............................. 56, 57
United States v. Stein,
   473 F. Supp. 2d 597 (S.D.N.Y. 2007) .................................................................. 21
United States v. Stewart,
   No. 03-CR-717 (MGC), 2004 WL 113506 (S.D.N.Y. Jan. 26, 2004) .................................. 50
United States v. Taveras,
   570 F. Supp. 2d 481 (E.D.N.Y. 2008) .................................................................. 48
United States v. Terranova,
   750 F. Supp. 3d 15 (E.D.N.Y. 2024) .................................................................... 33
United States v. Terry,
   702 F.2d 299 (2d Cir. 1983) ............................................................................... 8
United States v. Thomas,
   116 F.3d 606 (2d Cir. 1997) ........................................................................... 42, 47
United States v. Tin Yat Chin,
   371 F.3d 31 (2d Cir. 2004) ............................................................................... 32

United States v. Tocco,
  135 F.3d 116 (2d Cir. 1998) ........................................................................... 14
United States v. Tragas,
  727 F.3d 610 (6th Cir. 2013) ............................................................... 35, 36, 37
United States v. Trujillo,
  714 F.2d 102 (11th Cir. 1983) ...................................................................... 42
United States v. Vidal,
  No. 22-2857, 2024 WL 397630 (2d Cir. Feb. 2, 2024) .................................... 9
United States v. Wainright,
  351 F.3d 816 (8th Cir. 2003) ........................................................................ 38
United States v. Watts,
  934 F. Supp. 2d 451 (E.D.N.Y. 2013) ............................................ 8, 46, 53, 54
United States v. White,
  692 F.3d 235 (2d. Cir. 2012) .................................................................... 52, 53
United States v. Williams,
  930 F.3d 44 (2d Cir. 2019) ............................................................................. 7
United States v. Wilson,
  11 F.3d 346 (2d Cir. 1993) ........................................................................... 22
United States v. Yousef,
  327 F.3d 56 (2d Cir. 2003) ........................................................................ 6, 38
Untied States v. Thiam,
  934 F.3d 89 (2d Cir. 2019) ......................................................................... 6, 38
Wayte v. United States,
  470 U.S. 598 (1985) .................................................................................... 52

Statutes

18 U.S.C. § 1201(a) ........................................................................................ 1
18 U.S.C. § 3500 ...................................................................................... 29, 31
18 U.S.C. § 3500(e) ...................................................................................... 30
New York Penal Law § 55.10(3) ..................................................................... 23
New York Penal Law § 165.15(3) ................................................................... 23
New York Penal Law § 240.26(1) ................................................................... 23

Rules

Fed. R. Crim. P. 16(b)(1)(A) ......................................................................... 55
Fed. R. Evid. 104 ......................................................................................... 21
Fed. R. Evid. 401 ......................................................................................... 49
Fed. R. Evid. 401(b) ..................................................................................... 55
Fed. R. Evid. 403 ............................................... 24, 40, 41, 42, 45, 50, 54
Fed. R. Evid. 608 ......................................................................................... 25
Fed. R. Evid. 608(b) ................................................................................ 24, 25
Fed. R. Evid. 611(a) ..................................................................................... 25
Fed. R. Evid. 613 ......................................................................................... 29
Fed. R. Evid. 613(b) ..................................................................................... 30
Fed. R. Evid. 801 ......................................................................................... 18

Fed. R. Evid. 801(d)(2) .................................................................................................. 8
Fed. R. Evid. 801(d)(2)(A) ......................................................................................... 5, 6
Fed. R. Evid. 801(d)(2)(E) ............................................................................................ 8
Fed. R. Evid. 803(1) .................................................................................................... 13
Fed. R. Evid. 803(2) .................................................................................................... 14
Fed. R. Evid. 803(6) ............................................................................................... 32, 34
Fed. R. Evid. 902(11) .............................................................................................. 34, 35
Fed. R. Evid 801(c)(2) ...................................................................................... 14, 15, 17
Fed. R. Crim. P. 26.2 .............................................................................................. 31, 57
Fed. R. Evid. 402 ....................................................................................... 24, 40, 44, 50
Fed. R. Evid. 902(13) .................................................................................................. 33
Rule 902 ....................................................................................................................... 34

**Other Authorities**

2 Subst. Crim. L. § 10.4 ............................................................................................... 48
Federal Evidence § 100 ................................................................................................ 38

## PRELIMINARY STATEMENT

On June 8, 2026, the defendants Syed Rubel Ahmed, Anzu Khan, and Sultana Razia are scheduled to stand trial on one count of Conspiracy to Kidnap and one count of Kidnapping, both in violation of 18 U.S.C. § 1201(a).   Both counts relate to the brutal March 27, 2023 kidnapping of the individual described in the Second Superseding Indictment as John Doe-1.   The government respectfully moves the Court for in limine rulings in advance of trial.[1]   These motions would streamline the trial by simplifying the introduction of evidence that does not require custodians and by eliminating irrelevant argument, evidence, and questioning.   They would also preserve fairness by ensuring that relevant evidence is admitted; that irrelevant and prejudicial evidence is precluded; and that the parties understand what evidence will be admitted at trial.

The government seeks rulings:

- admitting out-of-court statements by the defendants and their co-conspirators as non-hearsay pursuant to Federal Rule of Evidence 801(d)(2);

- admitting certain out-of-court statements by John Doe-1 because they either fall under exceptions to the hearsay rule or are not offered for the truth;

- admitting certain prior consistent statements by John Doe-1 if necessary to rebut specific claims of inconsistences;

---

[1]    The government reserves its right to submit additional motions in limine should other evidentiary issues arise and does not waive any arguments not raised in this motion. Additionally, as is standard practice in this district, the government will file a separate motion approximately 14 days before jury selection commences to provide notice to the Court and the defendants, consistent with its obligations under Giglio v. United States, 405 U.S. 150 (1972), of certain materials relating to witnesses the government intends to call at the hearing, and to move to preclude or limit the defendant from cross-examining the witnesses about certain materials.

- precluding argument suggesting that evidence was unlawfully obtained;

- limiting the defendants from referring to irrelevant and prejudicial topics concerning John Doe-1;

- prohibiting the defendants from cross-examining witnesses with non-verbatim reports that have not been signed or adopted by the witness or from suggesting to the jury that the contents of an investigative report are statements of the witness;

- admitting self-authenticating records without a custodian to streamline the trial;

- permitting the use of a publication witness to show certain evidence in the most efficient manner;

- precluding evidence or arguments that are irrelevant, are unfairly prejudicial, or invite jury nullification;

- prohibiting a self-defense argument by Razia;

- limiting argument concerning absent co-conspirators to avoid misleading the jury or introducing irrelevant issues;

- precluding impermissible argument regarding the government's charging decisions; and

2

- ordering the defendants to produce discovery and trial exhibits for the sake of efficiency and fairness.[2]

For the reasons set forth below, the government respectfully submits that the Court should grant these motions in their entirety.

### RELEVANT BACKGROUND

The Second Superseding Indictment charges three kidnappings:  the March 27, 2023 kidnapping of John Doe-1 (Counts One and Two); the May 11, 2023 kidnapping of John Doe-2 (Counts Three and Four); and the May 10, 2023 kidnapping of John Doe-3 (Counts Five and Six).   Ahmed, Razia, and Khan, along with Abu Chowdhury, Ruhel Choudhury, and Shahed Alom, were charged in Counts One and Two.[3]   Ruhel Choudhury and Shahed Alom have already pled guilty, and Abu Chowdhury is scheduled to stand trial on Counts One through Six on September 8, 2026.

As relevant to the instant trial, the government intends to prove that on the evening of March 27, 2023, Abu Chowdhury and others abducted John Doe-1 from a public street, forced him into a car, and held him captive for approximately thirteen hours.   Several co-conspirators—

---

[2]    The government also objects to the use of a jury questionnaire, the disclosure of the demographic information of prospective jurors, and the showing of a video to prospective jurors explaining the concept of implicit bias.   The government understands that these constitute the Court's jury selection practice but incorporates its prior objections made during United States v. Iffat Lubna, No. 23-CR-278 (S-2).

[3]    Alom pled guilty to Count One on May 27, 2025 before the Honorable Peggy Kuo, United States Magistrate Judge for the Eastern District of New York.  See ECF Docket Entry dated May 27, 2025.  On July 2, 2025, Your Honor accepted defendant Alom's guilty plea.  See ECF Docket Entry dated July 2, 2025.  Shaidhual Chowdhury was also charged in Counts Five and Six.  He pled guilty to Count Five on May 27, 2025 before the Honorable Peggy Kuo; Your Honor accepted his plea on July 2, 2025.  See ECF Docket Entry dated July 2, 2025.  Ruhel Choudhury pled guilty to Count Three before Your Honor on March 17, 2026.  See Minute Entry dated Mar. 17, 2026.

including Ahmed, Khan, and Razia—joined the kidnapping for varying periods of time across the thirteen hours.   During this time, John Doe-1's captors shuttled John Doe-1 around Queens, all the while assaulting him, interrogating him, drugging him, stripping him naked, and humiliating him.   The defendants and their co-conspirators communicated via cellular telephone with one another to meet in various locations in Queens so that each could have his or her turn at threatening or assaulting John Doe-1.   During the kidnapping, Ahmed and Razia both assaulted John Doe-1. On several occasions, John Doe-1's kidnapping was filmed.   In one such video, Khan accosted John Doe-1 in a vehicle's backseat, grabbing him and threatening to kill him.   In another, Khan rifled through John Doe-1's phone and interrogates him.   In another video, Ahmed stood ominously outside the vehicle in which John Doe-1 is held captive.   Razia posted a video to TikTok of John Doe-1 stripped naked before a garage—a video taken during the kidnapping— with the caption "Mental Health Awareness Month" and three emojis smiling with their tongues out.

John Doe-1 ended up at Jamaica Hospital Medical Center in Queens on the morning of March 28, 2023.   He suffered serious physical injuries—including swelling in his face and on his ears and bruising from the beatings he suffered at the hands of the defendants and their co-conspirators—as well as trauma and shock from his kidnapping.

## ARGUMENT

I.   The Defendants' Out-of-Court Statements Are Admissible for Their Truth When Offered by the Government and Inadmissible When Offered by the Defendant

The government should be allowed to offer, in its case-in-chief, relevant statements by the defendants pursuant to Rule 801(d)(2)(A), and the defendants should be generally precluded from introducing their own statements, which are inadmissible hearsay.

4

1.    <u>The Government Should Be Allowed to Admit the Defendants' Statements</u>

A defendant's out-of-court statement is not hearsay when introduced by the government in a criminal trial to prove the truth of the facts stated therein because it is an opposing party's statement under Federal Rule of Evidence 801(d)(2)(A).   <u>See</u> Fed. R. Evid. 801(d)(2)(A) (establishing that a statement offered against an opposing party that "was made by the party in an individual or representative capacity" is not hearsay); <u>United States v. Russo</u>, 302 F.3d 37, 43 (2d Cir. 2002) ("Statements made by the defendant may be introduced by the government in a criminal trial to prove the truth of the facts stated in them because they are admissions of an adverse party." (citing Fed. R. Evid. 801(d)(2)(A))).

The government expects to introduce statements of the defendants and their co-conspirators in its case-in-chief in various forms, including through contemporaneous recordings, text messages, and live witness testimony:

- Witness testimony from John Doe-1 regarding statements made by the defendants;

- Statements made by the defendants in videos recorded during and after the kidnapping;

- Statements made by the defendants in text messages to each other and to third parties;

- Statements made by Khan and Razia during their post-arrest interrogations; and

- A spontaneous post-arrest statement made by Razia while she was being transported to the courthouse.

Because these statements are offered against opposing parties, they are admissible for their truth.

See Fed. R. Evid. 801(d)(2)(A); United States v. Yousef, 327 F.3d 56, 153 (2d Cir. 2003).   When

the government produces its exhibit list to defendants, it will note for the Court which exhibits

contain the defendants' statements.

> 2.   The Court Should Generally Preclude the Defendants from Admitting Their Own Statements

The same statements, if offered by the defendants, would constitute hearsay and be

inadmissible.   See United States v. Marin, 669 F.2d 73, 84 (2d Cir. 1982) ("When the defendant

seeks to introduce his own prior statement for the truth of the matter asserted, it is hearsay, and it

is not admissible."); see Yousef, 327 F.3d at 153 ("[W]hile the Government was free to introduce

the statement as an admission by a party-opponent, [the defendant] had no right to introduce it on

his own.").   Were the law otherwise, a defendant "could effectuate an end-run around the

adversarial process by, in effect, testifying without swearing an oath, facing cross-examination, or

being subjected to first-hand scrutiny by the jury."   United States v. McDaniel, 398 F.3d 540, 545

(6th Cir. 2005).

A limited exception is created by Rule 106, the rule of completeness.   Rule 106

creates a narrow exception for the admissibility of hearsay statements only where their "admission

of the statement in redacted form distorts its meaning or excludes information substantially

exculpatory of the declarant."   United States v. Odiase, 788 F. App'x 760, 763 (2d Cir. 2019)

(quoting Untied States v. Thiam, 934 F.3d 89, 96 (2d Cir. 2019)).   The rule permits a defendant

to introduce otherwise inadmissible hearsay statements only where he can show those statements

are "essential to explain an already admitted document, to place the admitted document in context,

or to avoid misleading the trier of fact."   United States v. Lyttle, 460 F. App'x 3, 7 (2d Cir. 2012)

(emphasis added) (quoting Phoenix Assocs. III v. Stone, 60 F.3d 95, 102) (2d Cir. 1995) (internal

quotation marks omitted).   The defendant bears the burden of proving that the exclusion of the otherwise inadmissible statements would unfairly render the government's evidence "misleading, void of context or confusing."   United States v. Ramsey, No. 21-CR-495 (ARR), 2023 WL 2523193, at *3 (E.D.N.Y. Mar. 15, 2023) (alterations and internal quotation marks omitted). "Mere allusions by a party to 'fairness' or 'context' do not satisfy the party's burden to demonstrate why the evidence should be admitted."   United States v. McMahon, No. 21-CR-265 (PKC), 2024 WL 896838, at *7 n.12 (E.D.N.Y. Mar. 1, 2024) (quoting Ramsey, 2023 WL 2523193, at *3).

The Second Circuit has repeatedly excluded self-serving hearsay statements offered by a defendant that were unnecessary to explain or appropriately contextualize an already admitted statement.   See, e.g., United States v. Williams, 930 F.3d 44, 61 (2d Cir. 2019) ("But the rule of completeness does not require the admission of self-serving exculpatory statements in all circumstances, and the mere fact that a suspect denies guilt before admitting it, does not—without more—mandate the admission of his self-serving denial." (citation omitted)); United States v. Fawwaz, 691 F. App'x 676, 678 (2d Cir. 2017) (affirming district court's refusal to admit statements under rule of completeness where "admitted statements [were] independent of the omitted statements"); United States v. Hill, 658 F. App'x 600, 605 (2d Cir. 2016) (affirming district court's parsing of defendant's recorded statement to admit discrete inculpatory statements and exclude other self-serving statements that he was "innocent"); United States v. Gonzalez, 399 F. App'x 641, 645 (2d Cir. 2010) (affirming exclusion of portion of defendant's statement where admitted portion did not distort meaning of full statement); United States v. Johnson, 507 F.3d 793, 796 (2d. Cir. 2007) (same); United States v. Jackson, 180 F.3d 55, 73 (2d Cir. 1999) (rejecting claim under the completeness doctrine that later portions of conversation provided relevant context and noting that "the portions of the tape proffered by [defendant] consisted largely of [his] own

7

self-serving statements, which, as offered by him, are inadmissible hearsay"). The defendants therefore should be precluded from introducing their own statements at trial, beyond the narrow exception provided by the rule of completeness. See, e.g., United States v. Terry, 702 F.2d 299, 314 (2d Cir. 1983) ("Rule 106 does not render admissible evidence that is otherwise inadmissible."); Gonzalez, 399 F. App'x at 645 (holding that rule of completeness cannot be used as a "mechanism to bypass hearsay rules").

II.    The Court Should Admit Statements Made by the Defendants' Co-Conspirators

The government expects to introduce statements from the defendants' co-conspirators. These statements are admissible pursuant to Federal Rule of Evidence 801(d)(2)(E) and should be conditionally admitted prior to trial.

1.    Applicable Law

Federal Rule of Evidence 801(d)(2)(E) allows the government to offer for their truth statements "made by [the defendants'] coconspirator[s] during and in furtherance of the conspiracy."[4] Fed. R. Evid. 801(d)(2)(E). Ultimately, the government must prove the existence and membership of that conspiracy only by a preponderance of the evidence. See United States v. Watts, 934 F. Supp. 2d 451, 474 (E.D.N.Y. 2013). The government need not prove the existence and membership of the conspiracy before offering statements pursuant to Rule 801(d)(2)(E). Rather, co-conspirator statements are conditionally admitted at trial, subject to the later admission of evidence necessary to prove those elements, a practice established by United States v. Geaney, 417 F.2d 1116, 1120 (2d Cir. 1969). The Geaney decision did not require any

---

[4]    This exclusion from the hearsay rule applies only to statements "offered against an opposing party." Fed. R. Evid. 801(d)(2). Accordingly, just as with the defendants' own statements pursuant to Rule 801(d)(2)(A), the defendants generally may not offer co-conspirator statements. See supra § I.2

preliminary determination by the Court prior to the admission "subject to connection" requirement, and leaves that final determination on the statements' admissibility to "the judge . . . when all the evidence is in." Id. Hearings on "the predicates for the admission of coconspirator statements" are "not required by Second Circuit law or customarily conducted in this Circuit." United States v. Grant, No. 05-CR-1192 (NRB), 2008 WL 678553, at *1 (Mar. 11, 2008). Instead, the government must make only "a sufficient showing in its proffer" for statements to be admitted subject to connection at trial. United States v. Vidal, No. 22-2857, 2024 WL 397630, at *4 (2d Cir. Feb. 2, 2024); see also United States v. Adelekan, 567 F. Supp. 3d 459, 468 (S.D.N.Y. 2021) (provisionally admitting "categories" of statements based on a finding that they "likely will be admissible as co-conspirator statements"); United States v. Santiago, 199 F. Supp. 2d 101, 105 (S.D.N.Y. 2002) (provisionally admitting co-conspirator statements based on the government's "good faith and objectively reasonable belief that the missing links will be supplied as they present their case").

2.    Discussion

The government expects to offer at trial videos and audio clips that include statements from the defendants' co-conspirators that were made during John Doe-1's abduction by the individuals holding him captive.[5] The existence of the conspiracy is obvious: there are more than a dozen videos of John Doe-1's kidnapping with various individuals participating.

---

[5]    For the avoidance of doubt, the following videos and audio clips, which the government has previously produced, contain co-conspirator statements: clips produced at EDNY_007291 (IMG_2151, IMG_2152, IMG_2154, IMG_2155, IMG_2157, IMG_2158, IMG_2161, IMG_2162, IMG_2163, IMG_2164, IMG_2180, and 20230328 015710); EDNY_007303, EDNY_007304; and EDNY_007305. IMG_2183 (produced at EDNY_007291) contains only the statements of Khan and Razia and is admissible pursuant to Rule 801(d)(2)(A). The government has also produced to the defendants translations of all of these audio and video files.

There also can be little serious question as to whether the declarants are members of the conspiracy and whether the statements are in furtherance of the conspiracy: with the exception of John Doe-1's statements, all of the statements in the videos are made by individuals actively participating in the kidnapping during the kidnapping.    They are therefore admissible pursuant to Rule 801(d)(2)(E).[6] At minimum, the government's proffer satisfies the low bar to conditionally admit the statements subject to connection.

From a fairness perspective, pretrial rulings will give all parties notice of the evidence that can be offered against the defendants at trial.   Such notice not only allows the government to prepare its case, but it also allows the defendants to prepare their defenses and to decide whether to proceed to trial at all.   From a practical perspective, pretrial rulings allow the government to prepare its exhibits in a timely manner and thereby substantially improve the trial's efficiency.   The government will need to prepare dozens of binders for the jurors with transcriptions and Bengali-to-English translations, edit hours of subtitled recordings and videos, and prepare advance copies for the Court and defense counsel before trial.   See Palmieri v. Defaria, 88 F.3d 136, 141 (2d Cir. 1996) ("The purpose of an in limine motion is 'to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial.'" (citation omitted)).

In a prior trial in this matter, the Court inquired as to the authority to refer to co-conspirator statements in its opening statement in light of United States v. Fox, No. 23-CR-227

---

[6]     Certain statements made by co-conspirators—such as questions, commands, or threats—are also admissible because they are not statements for their truth, and thus not hearsay, by their very nature.   See Bellomo, 176 F.3d 580, 586 (2d Cir. 1999) (commands or threats are not hearsay); United States v. Oguns, 921 F.2d 442, 449 (2d Cir. 1990).

10

(NGG), 2025 WL 2076664, at *18 (E.D.N.Y. July 23, 2025).    See Minute Entry dated March 18, 2026.    At this time, the government does not yet know whether it will refer to any Rule 801(d)(2)(E) statements in its opening statement.    In any case, the government submits that it should be able to do so.    Fox cites no authority for that holding, and the government has not been able to identify any other decision holding the same.[7]    The government calls attention to United States v. Grant, in which Judge Buchwald held precisely the opposite.    Grant, No. 05-CR-1192 (NRB), 2008 WL 678553, at *1 (S.D.N.Y. Mar. 11, 2008) ("Accordingly, the government may refer to 'coconspirator' statements in its opening and introduce such evidence unconditionally."). Nor does the rule in Fox seem to follow from the Geaney protocol because there is no meaningful distinction between a reference in an opening statement to a putative co-conspirator statement and the conditional admission of such a statement during the trial.    In both cases, the Court has not yet ruled on the statement's ultimate admissibility.    Nor should it matter that the statement is not yet in evidence.    At the time of an opening statement, nothing at all is in evidence.    If the government promises evidence that it ultimately fails to deliver, the defendant can highlight that failure to the jury in closing argument.    That is just as true for a co-conspirator statement as for any other piece of evidence.

---

[7]    In United States v. Saneaux, the Court did hold that the government could not refer in its opening statement to particular statements that the government contended were co-conspirator statements, 365 F. Supp. 2d 488, 504 (S.D.N.Y. 2005), but that was because the court had "difficulty in fathoming an interpretation of [the relevant statements] which could support the government's position that those statements were made in furtherance of any conspiracy," see id. at 498.    However, that exception proves the government's point.    The court there was "careful to limit the effect of [its] Order to [those statements]" and not to co-conspirator statements in general. Id. at 504.    In other words, the court did conditionally admit co-conspirator statements before trial and did permit the government to refer to those co-conspirator statements in its opening statement. The government was only forbidden from referencing those co-conspirator statements with so weak a foundation that the Court refused to conditionally admit them absent more proof.

11

Accordingly, the government asks that the Court at least conditionally admit all co-conspirator statements in these recordings.   The government has identified for the defendants the relevant recordings, see supra note 5, and when it produces its initial exhibit list to defendants, the government will also provide those exhibits to the Court and identify the exhibits containing co-conspirator statements.   The government submits that all statements can be conditionally admitted based on its proffer, and if the defendants have specific statements to which they object, the government urges them to do so in writing, so that the government may respond and the Court can adjudicate those particular statements.   This is consistent with Geaney, is typical of how such statements are admitted in this district, and would be most efficient.   On the other hand, if the Court prefers, the government is also available to reserve as many hours as necessary for the parties and the Court to go through the transcripts of each recording and discuss their admissibility line-by-line.   This latter approach is not the practice in this district or this Circuit more broadly.   See, e.g., United States v. Konstantinovskiy, No. 19-CR-408 (MKB), 2024 WL 3360379 ("Defendants have cited no cases in which a court in this Circuit held a Rule 104 hearing on the issue of conspirator statements, and note that this would be a departure from the typical procedure in this Circuit.").   Regardless of the method the Court sees most appropriate here, the government respectfully requests a ruling on the statements' conditional admissibility (and, if necessary, the scheduling of any additional pre-trial hearing) prior to the commencement of trial.

III.   The Court Should Admit Certain Out-of-Court Statements by John Doe-1

The government also intends to offer in its case-in-chief evidence of certain statements made by John Doe-1.   As described below, these statements are admissible because they constitute direct evidence of the charged crimes and either fall within an exception to the hearsay rule or are not hearsay at all.

1.    Applicable Law

First, Rule 803 of the Federal Rules of Evidence provides an exception to the general rule against hearsay for any statement "describing or explaining an event or condition, made while or immediately after the declarant perceived it"—a "present sense impression."  Fed. R. Evid. 803(1).  "By its own terms, application of Rule 803(1) has three distinct requirements: (i) the statement must describe or explain the event perceived; (ii) the declarant must have in fact perceived the event described; and (iii) the description must be 'substantially contemporaneous' with the event in question."  United States v. Mejia-Valez, 855 F. Supp. 607, 613 (E.D.N.Y. 1994) (internal citations omitted).  Because "in many, if not most, instances precise contemporaneity is not possible, . . . a slight lapse is allowable between the event perceived and the declarant's statement."  Id. (internal citation and quotation marks omitted omitted).  "[T]here is no per se rule indicating what time interval is too long."  Id. (citation and internal quotation marks omitted).

The reason for this exception is twofold.  First, the immediacy requirement reduces the opportunity for reflection and thus minimizes the likelihood of deception or fabrication on the part of the declarant.   Second, immediacy also reduces the likelihood that the declarant will have inaccurately remembered the event in question.  See United States v. Jones, 299 F.3d 103, 112 (2d Cir. 2002) ("Such statements are considered to be trustworthy because the contemporaneity of the event and its description limits the possibility for intentional deception or failure of memory.").

Second, Rule 803(3) of the Federal Rules of Evidence provides a very similar exception for "statement[s] of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health)."  "[T]he reasons for the state of mind exception focus on the contemporaneity of the statement and the unlikelihood of deliberate or conscious misrepresentation."  United States v.

13

Graham, No. 14-CR-500 (NSR), 2015 WL 6161292, at *7 (S.D.N.Y. Oct. 20, 2015) (quoting

United States v. Cardascia, 951 F.2d 474, 487 (2d Cir.1991)).

Third, Rule 803(2) of the Federal Rules of Evidence provides an exception to the

rule against hearsay for excited utterances.  An excited utterance is a statement "relating to a

startling event or condition, made while the declarant was under the stress of excitement that it

caused."  Fed. R. Evid. 803(2).  To qualify as an excited utterance, the proponent of an out-of-

court statement must establish the following: (i) that a startling event occurred; (ii) that the

declarant made the statement while under the stress of the excitement caused by the startling event;

and (iii) that the declarant's statement relates to the startling event.  See United States v. Brown,

254 F.3d 454, 458 (2d Cir. 2001).

"The rationale for this hearsay exception is that the excitement of the event limits

the declarant's capacity to fabricate a statement and thereby offers some guarantee of its reliability.

An excited utterance need not be contemporaneous with the startling event to be admissible under

Rule 803(2)."  United States v. Tocco, 135 F.3d 116, 127 (2d Cir. 1998).  Rather, the focus of

the exception is on "the psychological impact of the event itself" and whether the statement was

made while the declarant was "under the stress of excitement caused" by that event.  United States

v. Jones, 299 F.3d 103, 112 & n.3 (2d Cir. 2002) (internal quotation marks and citation omitted).

Fourth, a declarant's prior statement is not hearsay when a statement is not offered

"to prove the truth of the matter asserted in the statement."   Fed. R. Evid 801(c)(2).

2.    Discussion

The government intends to introduce John Doe-1's statements through audio and

video recordings as well as through his own testimony if he testifies.   These audio and video

14

recordings were all made during the kidnapping of John Doe-1.[8]    While the government may not play every minute of those recordings, the government submits that all of John Doe-1's statements within these recordings are admissible.    The list below describes the categories into which John Doe-1's statements fall:

- Statements of his physical condition such as "I need to drink water" and "I am getting sleepy";

- Statements of fear by John Doe-1 such as "No, I am afraid because Abu brother wants to beat me," and asking, "I will be in trouble?    How much trouble will I need to witness?    Will you kill me?";

- Reactions of John Doe-1 to being dragged from a vehicle and filmed nude;

- Responses to rapid-fire questions while he is filmed nude, including responding "Abu" and "you" when asked "Who controls you?" multiple times;

- Responses to threats, such as stating, "I have kept saying one thing no matter how much you beat me, control me" in response to "Where is the knife?";

- Responses to lengthy interrogations by Khan and his co-conspirators, largely concerning who gave certain information to him; and

- Statements of John Doe-1 while apparently drugged and speaking in a confused manner.

Some of these statements are admissible as either present sense impressions under Rule 803(1) or "statement[s] of the declarant's then-existing . . . physical condition" under Rule

---

[8]    These are the same recordings identified with respect to co-conspirator statements.    See supra note 5.

15

803(3).    Those statements include his statements concerning his physical condition, such as his sleepiness or his need to drink water.    Other statements describe his "then-existing . . . emotional [or] sensory . . . condition (such as mental feeling, pain, or bodily health)," under Rule 803(3) including statements of fear in response to the kidnapping, violence, sexual humiliation, and threats that he faced.    Moreover, John Doe-1's responses to the violence, sexual humiliation and threats can also be considered excited utterances because such violence, sexual humiliation, and threats are startling events, and the relevant statements were made while still under stress of such startling events and in direct response to the violence, sexual humiliation and threats.

Many of John Doe-1's statements are also admissible as non-hearsay because they are not offered for their truth.    For example, the government intends to show the interrogation of John Doe-1 in which he is repeatedly asked about who gave him certain information.    John Doe-1's responses are not offered for the truth of who actually gave John Doe-1 this information, but rather to demonstrate the motives of the defendants' and their co-conspirators' in kidnapping him, as well as to show the fact and nature of his confinement and interrogation.    Likewise, the words that John Doe-1 says while he is dragged naked and then filmed nude in front of a garage are not offered for the truth of John Doe-1's statement but rather to show the violent, forced nature of his kidnapping.    His responses to taunts during his kidnapping are not offered to show their truth, but rather to demonstrate his state of mind during the kidnapping.    Likewise, John Doe-1's statements while apparently drugged are not offered for their truth but rather to show that he was in fact drugged as part of the kidnapping.

The categories of John Doe-1's statements enumerated above—particularly when combined with the government's identification of the relevant audio and video files and the government's prior production of translations of those files—fairly describe the range of

16

statements that John Doe-1 makes in the audio and video files described above. The government submits that all of his statements in these recordings, see supra note 5, are admissible and requests a pre-trial ruling on their admissibility. The government will supply these recordings to the Court along with translations when the government provides its exhibit list to the defendants. If the defendants intend to challenge the admissibility of any particular John Doe-1 statements or categories of statements, the government urges them to identify such statements or categories in advance of trial. As with co-conspirator statements, the government believes this is the most efficient method. However, as proposed with co-conspirator statements see supra § II.2, the government is available, if necessary, to determine the admissibility of all of John Doe-1's statements on a line-by-line basis before trial. In either case, the government believes that the admissibility of all of John Doe-1's video- and audio-recorded statements should be determined prior to trial.

IV.    John Doe-1's Prior Consistent Statements Are Admissible as Non-Hearsay

If John Doe-1 testifies and a defendant attacks his credibility, John Doe-1's prior consistent statements are admissible under Rule 801(d)(1)(B). In such a case, the government will seek to introduce John Doe-1's prior statements to law enforcement, in his medical records, and in video recordings from the kidnappings to rebut specific claims of inconsistencies.

1.    Applicable Law

Pursuant to Rule 801(d)(1)(B), where a declarant-witness testifies and is subject to cross-examination, the witness's prior consistent statements are "not hearsay" when offered (i) "to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying," or (ii) "to rehabilitate the declarant's credibility as a witness when attacked on another ground." The Advisory Committee amended the Rule in 2014 to expand the reasons for which prior consistent statements may be offered, to admit "consistent

17

statements that rebut . . . attacks on a witness—such as the charges of inconsistency or faulty memory." Fed. R. Evid. 801 Adv. Comm. Notes. Prior consistent statements are admissible for their truth. United States v. Flores, 945 F.3d 687, 705 (2d Cir. 2019).

Under the first prong of Rule 801(d)(1)(B), prior consistent statements are admissible to rebut a claim of improper influence or motive once the proponent establishes, by a preponderance of the evidence: "(1) that the prior consistent statement is consistent with the witness's in-court testimony; (2) that the prior consistent statement is being offered to rebut an express or implied charge against the witness of recent fabrication or improper influence or motive; and (3) that the prior consistent statement was made prior to the time that the supposed motive to falsify arose." Phoenix Assocs. III, 60 F.3d at 103.

Under the second prong of Rule 801(d)(1)(B), when offered to "rehabilitate the declarant's credibility," there is no established test for admissibility. However, the Second Circuit has upheld the admissibility of prior consistent statements to rebut claims that the witness could not be trusted and that the testimony being provided was inconsistent with earlier statements. For example, in United States v. Purcell, 967 F.3d 159, 196-97 (2d Cir. 2020), the Second Circuit affirmed the admissibility of prior consistent statements of a sex trafficking victim, after she was cross-examined, concerning alleged inconsistencies between her testimony at trial and her prior statements to the police. "By introducing [a third party's] testimony, which recounted [the victim's] statements to police in full and largely matched the version of events that [the victim] had recounted at trial, the government plainly sought to rebut the charge of inconsistency and to rehabilitate [the victim's] credibility by placing the alleged discrepancies in context." Id. Similarly, in Flores, 945 F.3d at 705-06, the Circuit affirmed the admissibility of an agent's contemporaneous notes to rebut the defendants' arguments in opening—albeit "brief and not their

18

main point"—that the investigation have been "botched," that poor interview notes had been taken, and that the jury could not rely on the agent's recollection of what had been said during those interviews.

Procedurally, Rule 801(d)(1)(B) can be triggered as early as opening statements.. See Flores, 945 F.3d at 706.  In such circumstances, the government may introduce prior consistent statements in a witness's direct examination.  Id. (finding Rule 801(d)(1)(B) "does not restrict admissibility to statement of a witness who has already been cross-examined").  Moreover, a witness's prior statements need not be "identical to a precise statement challenged" to be admissible.  United States v. Ray, No. 20-CR-110 (LJL), 2022 WL 813942, at *2 (S.D.N.Y. Mar. 16, 2022).  Rather, it is sufficient that the defense "challenged statements on the same or closely related topics and that the prior statement operated not just to rehabilitate the witness's credibility generally but also to rehabilitate the witness's credibility with respect to the testimony that has been challenged."  Id.

2.    Discussion

If John Doe-1 testifies, the government anticipates that the defendant will attack John Doe-1's credibility in opening statements or cross-examination and paint John Doe-1 as a liar, mistaken in his memory, or both.  According to Rule 801(d)(1)(B), the government would be permitted to rehabilitate John Doe-1's account and his credibility with his prior consistent statements, namely from statements he made in prior law enforcement interviews, statements to medical personnel for treatment, and his statements from the videos.[9]  John Doe-1's prior consistent statements to law enforcement would serve the purposes that the court in Purcell stated

---

[9]    As noted above, many of John Doe-1's statements in the kidnapping videos are admissible as non-hearsay or pursuant to hearsay exceptions.  See supra § IV.  To the extent they are not, however, Rule 801(d) would allow their introduction in these circumstances.

as proper under Rule 801(d)(1)(B): to rebut the defendant's accusation of inconsistency, to place the alleged discrepancies in context and to show that John Doe-1 had made previous statements that were consistent with his testimony at trial.  See Purcell, 967 F.3d at 196-97.  Likewise, in the kidnapping videos, John Doe-1 also makes statements that would be admissible to rehabilitate John Doe-1 when his credibility is attacked.   Examples of statements that the government would seek to admit as prior consistent statements to medical personnel, as documented in his certified medical records include:

- "Per patient he was attacked and punched all over his face and body and he passed out."  (EDNY_010619)

- "Patient's amnesia has resolved.   He can recall all the events of yesterday. States he was jumped by a group of people that drove up to him, jumped out assaulted him and got back in the car.   He then fell when walking down the street."  (EDNY_010632)

- "Pt stated that he was assaulted in a random attack and was robbed of his phone and wallet."  (EDNY_010642)

Portions of statements that John Doe-1 made to law enforcement, as documented in NYPD reports, that the government would seek to use as prior consistent statements include:

- "C/V states while walking N/B on 181 Street towards Hillside Avenue, known perp did approach him from behind and place C/V in a headlock. Known perp then stated, 'if you scream, I will shoot'", C/V states known perp did forcibly drag him into a black Jeep without his consent.  Upon being dragged into the vehicle, C/V states four unknown perps inside the vehicle began to strike him with closed fists, causing substantial swelling

20

and bruising to the face and body.  C/V states that known and unknown perps did forcibly remove his clothing and listed personal property and proceeded to record him without consent.  C/V further states that one unknown perp did display a small black card with the words, 'Police Captain' in gold lettering.  Unknown perp then said 'If you go to the police I will throw you in jail for 30 years', C/V states that he passed out and regained consciousness inside Jamaica Hospital without knowing how he got there."  (EDNY_007831-32)

- John Doe-1's identification of "Abu," and "Sayed Rubal," as two of his kidnappers.  (EDNY_007832-33)

Therefore, the Court should permit the government to introduce John Doe-1's prior consistent statements under Rule 801(d)(1)(B) if the defendant attacks John Doe-1's credibility, whether such attack appears in the form of a jury address or cross-examination.

V.   The Defendants Should Be Precluded from Suggesting Evidence Was Unlawfully Obtained

The defendants should be precluded from arguing to the jury that evidence was improperly or illegally obtained.  Nor should they be permitted to ask questions suggesting or eliciting testimony to that effect.

Rule 104 makes plain that the Court decides "preliminary questions," including whether evidence is admissible, outside the presence of the jury.  Fed. R. Evid. 104.  Questions concerning the lawfulness of interviews or searches fall squarely within Rule 104.  See United States v. Stein, 473 F. Supp. 2d 597, 601 (S.D.N.Y. 2007) (explaining that "a question of law for the Court" is "a matter on which it would be inappropriate to take evidence before a jury"); United States v. Lights, No. 15-CR-721 (RWS), 2016 WL 7098633, at *1-2 (S.D.N.Y. Dec. 5, 2016)

21

("The stop and subsequent searches were all based on valid probable cause.   This issue has been litigated and decided.   No reference to the illegality of the stop or subsequent searches will be permitted at trial.").

With respect to the evidence suppressed by the Court—evidence from co-defendant Abu Chowdhury's "Red Phone"—these defendants did not personally move to suppress that evidence as to themselves, as they would not have had standing to do so, because a "defendant does not have a privacy interest in the contents of a phone that does not belong to her."   United States v. Salman, No. 24-CR-206 (NCM), 2025 WL 3089279, at *4 (E.D.N.Y. Nov. 5, 2025). Moreover, two defendants (Ahmed and Khan) declined the Court's invitation to argue that the Red Phone evidence ought to be suppressed as to themselves.   See Minute Entry dated Nov. 24, 2025. Any suppression arguments by Ahmed and Khan regarding either the Red Phone or any other evidence are now waived.   See United States v. Howard, 998 F.2d 42, 52 (2d Cir. 1993) ("The failure to file a timely motion [to suppress] constitutes a waiver."); United States v. Wilson, 11 F.3d 346, 353 (2d Cir. 1993) (finding waiver where defendant filed suppression motion three weeks after court-imposed deadline for such motions).   Razia did seek to benefit from the Court's Red Phone decision as to Abu Chowdhury, see ECF No. 392 (Dec. 22, 2025), but that still-pending motion is entirely without merit, see ECF No. 451 (Mar. 9, 2026).

Furthermore, none of these defendants can attempt to relitigate any unsuccessful aspects of Abu Chowdhury's motion to suppress because, again, they lack standing to do so, and trial is not the appropriate venue for relitigating suppression issues.   See, e.g., United States v. Sebastian, 497 F.2d 1267, 1270 (2d Cir. 1974) ("[A] hearing as to admissibility of challenged evidence . . . cannot be relitigated later before the trier of fact.").   The Court should therefore preclude argument and evidence on the legality of the manner in which evidence was obtained.

VI.    Cross-Examination, Statements, and Arguments Concerning John Doe-1's Criminal History, Prior Acts and Prior Conflicts with the Defendant and Others Should Be Limited

Cross-examination of John Doe-1 concerning his prior interactions with law enforcement and details of his alleged prior conflicts with the defendant or others should be strictly limited to avoid distracting the jury, causing unfair prejudice or unduly delaying the trial.   So, too, should the Court forbid references to the same in opening statements or closing arguments.

1.    Relevant Facts

Prior to the kidnapping, John Doe-1 had personal disputes and pre-existing relationships with Razia and Ahmed.  It appears that John Doe-1 and Ahmed knew each other through a common membership in a community organization, and their prior interactions also involve a business jointly owned by co-conspirator Abu Chowdhury and others.  Additionally, Sultana Razia filed four police complaints John Doe-1 for alleged harassment, all of them prior to John Doe-1's kidnapping.  Razia accused John Doe-1 of making disparaging remarks about her, such as calling her a prostitute, and other sexually explicit comments directed at her.   Only one of those four complaints led to an arrest, which occurred on January 21, 2021.  There was no conviction.  Rather, a single charge of harassment in the second degree in violation of New York Penal Law § 240.26(1)—a "violation" under New York State law—was adjourned in contemplation of dismissal.   See New York Penal Law § 55.10(3) (distinguishing a violation from felony and misdemeanor offenses); id. § 70.15(4) (setting maximum custody term for a violation at 15 days).

The government is aware of just one other arrest of John Doe-1: a May 2, 2025 misdemeanor arrest for intending to obtain transportation without paying in violation of New York Penal Law § 165.15(3)—namely, jumping a subway turnstile.  That, too, was adjourned in contemplation of dismissal.

23

2.    Applicable Law

Under Rule 608(b), a witness may be cross-examined regarding "specific instances of a witness's conduct" where probative of his character for truthfulness or untruthfulness.   Fed. R. Evid. 608(b).   Thus, Rule 608 permits cross-examination concerning specific instances of conduct, if at all, only to the extent that the conduct in question is "probative of truthfulness or untruthfulness."   United States v. Flaharty, 295 F.3d 182, 191-92 (2d Cir. 2002).   Additionally, Rule 608(b) does not permit the admission of extrinsic evidence to show a witness's character for untruthfulness.   Id.   However, Rule 608(b) does provide an exception for admission of a criminal conviction that satisfies criteria set forth in Rule 609 to impeach a witness's character for truthfulness.   Under Rule 609(a), a witness's character for truthfulness can be impeached with evidence of a criminal conviction that: (1) was punishable by death or imprisonment for more than one year or (2) regardless of punishment, the court can determine that the elements of the offense required proof or admission of a dishonest act or false statement.   In considering whether to admit evidence of a criminal conviction under Rule 609, the court must also balance whether the conviction's probative value outweighs its prejudicial effect.   See id.

Even where a cross-examination topic may relate to credibility or bias, admission of such evidence is limited by Federal Rules of Evidence 402 and 403, the latter of which excludes otherwise relevant evidence if its "probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."   Fed. R. Evid. 403; see also United States v. Hossain, No. 19-CR-606 (SHS), 2021 WL 4272827, at *6 (S.D.N.Y. Sept. 21, 2021) (using Fed. R. Evid. 401, 402 and 403 to assess and grant the government's request to limit the scope of cross-examination).   Likewise, Federal Rule of Evidence 611 requires district courts to exercise

24

"reasonable control" over the mode of interrogating witnesses to "avoid wasting time" and to "protect witnesses from harassment or undue embarrassment." Fed. R. Evid. 611(a).

The district court retains discretion to limit or preclude cross-examination to avoid harassment, embarrassment and confusion of the issues.  See United States v. James, 712 F.3d 79, 102 (2d Cir. 2013) ("[A] district court may impose reasonable limits on cross-examination to protect against, e.g., harassment, prejudice, confusion, and waste."); United States v. Lawes, 292 F.3d 123, 131-32 (2d Cir. 2002) (affirming preclusion of cross-examination on a prior adverse credibility finding against a law enforcement officer by the Civilian Complaint Review Board where "the proposed cross-examination was of little, if any, plausible relevance to [the officer's] credibility").

3.    The Court Should Preclude Cross-Examination of John Doe-1 or Other References Regarding His Prior Contacts with Law Enforcement

Here, the Court should preclude cross-examination of John Doe-1 regarding his arrests and Razia's prior complaints against him because they are improper impeachment evidence, unfairly prejudicial, and inadmissible hearsay.  The general rule established by Fed. R. Evid. 608(b) also precludes evidence and cross-examination of witnesses regarding arrests that do not lead to conviction, unless the conduct underlying such arrest bears on the witness's "character for truthfulness or untruthfulness."  Fed. R. Evid. 608.  The Second Circuit has repeatedly observed that evidence of prior arrests or charges that have not resulted in convictions generally cannot be used to impeach the credibility of a witness.  See United States v. Salameh, 152 F.3d 88, 131-32 (2d Cir. 1998); United States v. Semensohn, 421 F.2d 1206, 1208 (2d Cir. 1970) ("It is settled that in a trial a witness's acts of misconduct are not admissible to impeach his credibility unless the acts resulted in the obtaining of a conviction."); United States v. Acarino, 408 F.2d 512, 514 (2d Cir. 1969) ("The prosecuting attorney was correct in his apparent assumption that such evidence

25

of misconduct as an indictment is not normally admissible for impeachment purpose."); Stephen v. Hanley, No. 03-CV-6226 (KAM), 2009 WL 1471180, at *8 (E.D.N.Y. May 21, 2009) ("None of the unproven charges or prior arrests bear on [the witness]'s character for truthfulness and, thus, are also inadmissible pursuant to Rule 608.").  Based on the above, the Court should preclude the defendants from cross-examining John Doe-1 or introducing evidence concerning John Doe-1's prior arrests or NYPD complaints filed against him.

Nor should Razia be able to introduce the substance of her prior complaints of harassment.  In these complaints, Razia accused John Doe-1 of making disparaging remarks about her reputation.  Of particular concern, however, are comments that Razia claims John Doe-1 made that are sexually explicit and/or graphic.  These comments would be unfairly prejudicial, potentially suggesting that the victim deserved to be kidnapped.  That risk here is very real because Razia's defense counsel has indicated on at least three separate occasions that her defense will involve a smearing of the victim and a suggestion that he got what was coming to him—an inflammatory opinion that is entirely irrelevant to the elements of the crime:

- "And if anything, I believe what the evidence will show is that *their so-called victim had been harassing my client* for the last five years."  Tr. of Bond Proceedings as to Razia, ECF No. 94 at 9 (Jan. 11, 2024) (filed Jan. 18, 2024) (emphasis added).

- "[John Doe-1] was a prolific publicity-seeking gadfly in the Bengali community who trolled Abu Chowdhury and others on social media, nastily and repeatedly defaming them.  He then issued a specific, public challenge on Tik Tok on the night in question for Abu Chowdhury to fight him.  *Apparently, Chowdhury decided to accept the challenge and teach this annoying, hateful man a lesson, and forcefully brought him to a public shaming and airing of grievances at which Sultana*, a housewife whom Victim 1 had falsely and publicly accused of theft and sexual misconduct, amid other spewings, *was one of a number of community members, also objects of this man's ravings*, who were allegedly summoned by Abu Chowdhury to this event."  Motion for Separate Trial, ECF No. 259 at 1 (Apr. 15, 2025) (emphasis added).

26

- "Thus, this video and others like it are significantly more than Victim 1 merely tarnishing his credibility, but rather exculpatory evidence explaining why *a number of those aggrieved, including Sultana would accept an opportunity offered by Abu Chowdhury to attend a meeting at which those viciously defamed by Victim 1 could confront him* in the hope that he would stop the harassment." Letter to Court re Brady demands, ECF No. 351 at 2 (Sept. 22, 2025) (emphasis added).

United States v. Agostini, 280 F. Supp. 2d 260 (S.D.N.Y. 2003) is instructive here. There, the court ruled to limit the cross-examination of the victim of an alleged assault because evidence of his "prior criminal record and recent arrests has the potential for substantial prejudice." Id. at 261. The Court held that such evidence "may be viewed as a reflecting poorly on [the victim's] character and influence the jury to a point of distraction from the matter about which he is called on to testify." Id. Notably, in Agostini, the victim's arrests included "two counts of the lesser offense of harassment, a violation" as well as more serious misdemeanor charges, and the court there held that these were not related to the victim's "veracity" and not suitable subjects for cross-examination. Id. The victim here, John Doe-1, faced an arrest—but no conviction—for a harassment violation, and like in Agostini, he should not be cross-examined on this arrest. In addition to the arrests, the Agostini court also barred cross-examination on the concern that evidence of a prior conviction would "distract the jury from the crime charged against [the defendant] and instead focus on whether [the victim], as a convicted felon 'deserved' to be assaulted by [the defendant]." Id. The same principle applies here that it would district the jury if the defendants were permitted to suggest that the defendant "deserved" to be the victim of a crime. No one deserves to be the victim of a crime, and a cross-examination or argument suggesting the same is offensive, improper and irrelevant.

Relatedly, and more practically, the Court should also limit the cross-examination of John Doe-1 on this irrelevant and prejudicial topic because it would create a distracting mini-

27

trial and rely on inadmissible hearsay.  To prove these irrelevant and prejudicial allegations, Razia's counsel would need to admit extrinsic evidence of the allegations, most of which did not even result in an arrest and none of which resulted in a conviction.  This would be distracting to the jury and improperly require them to assess evidence unrelated to the charges the defendants are facing.  More problematically, any such "proof" would rely on inadmissible hearsay— namely, Razia's own out-of-court allegations of harassment that are offered for their truth.  There is no applicable hearsay exception that would allow defense counsel to admit such hearsay.

The government does expect to elicit from John Doe-1 the nature of his prior relationship with Razia as well as their prior disputes, which the government understands is due to John Doe-1's accusations of theft against her.  This information is proper because it is relevant to the defendant's motive.  If the Court concludes that some bias inquiry is appropriate, the proper remedy is a narrow, sanitized inquiry that avoids the prejudicial hearsay accusations and arrests. For example, Razia's counsel may ask the victim whether he had any animus toward Razia before he was kidnapped, whether he had any reason to want Razia convicted before he was kidnapped, or whether anything about his prior interactions with Razia affects his testimony.

While defense counsel may probe in a limited manner John Doe-1's biases in light of prior conflicts between him and Razia, the defendants should not be allowed to create a distraction through cross-examination and now litigate those conflicts with extrinsic evidence before the jury.  The government respectfully requests that the Court preclude any cross-examination on Razia's prior allegations of harassment.  Moreover, because there is no reason to believe that evidence of the alleged harassment will be admitted at trial, Razia's defense counsel should also be barred from making any reference to such allegations in her opening statement or her closing argument.

VII.    The Defendant Should Not Be Permitted to Cross-Examine Witnesses with Non-Verbatim Reports That Have Not Been Signed or Adopted by the Witness or Suggest to the Jury that the Contents of an Investigative Report Are Statements of the Witness

The government will provide material pursuant to 18 U.S.C. § 3500, including reports summarizing investigators' interviews with government witnesses.   These reports were neither reviewed nor adopted by any of the government's witnesses.   Moreover, they were finished after the interviews were completed and reflect the thought processes and interpretations of the agents, and they do not constitute verbatim recitals or transcripts of any of the witnesses' statements.   The Court should not permit the defendant to cross-examine witnesses as if they were the witness's own statements.

1.    Applicable Law

A party may impeach a witness with a prior inconsistent statement of that witness, but the statement must be the witness's own statement that he or she either made or adopted.   See Fed. R. Evid. 613; United States v. Almonte, 956 F.2d 27, 29 (2d Cir. 1992) (concluding that the trial court did not err in refusing to admit prosecutor's notes taken during debriefing of witness and explaining that a "third party's characterization" of a witness's statement does not constitute a prior statement of that witness "unless the witness has subscribed to that characterization"); United States v. Leonardi, 623 F.2d 746, 757 (2d Cir. 1980) (holding that because "the written statement of the FBI agent was not attributable to [the witness]," it was "properly rejected as a prior inconsistent statement").   The problem with using a third party's summary or characterization of the witness's statement to impeach is "one of relevancy": "If a third party's notes reflect only that note-taker's summary characterization of a witness's prior statement, then the notes are irrelevant as an impeaching prior inconsistent statement, and thus inadmissible." Almonte, 956 F.2d at 29.

29

The Jencks Act governs the discoverability of a witness's prior statements, and its definition of "statement" accords with Rule 613(a) and applicable case law on proper impeachment using prior inconsistent statements. Under the Jencks Act, a statement means "a written statement made by said witness and signed or otherwise adopted or approved by him," a recording or transcription that "is substantially [a] verbatim recital of an oral statement made by said witness and recorded contemporaneously," or a statement made by a witness to the grand jury. 18 U.S.C. § 3500(e). Because the Jencks Act is meant to restrict the defendant's use of discoverable statements for impeachment, "only those statements which could properly be called the witness' own words should be made available to the defense for purposes of impeachment." Palermo v. United States, 360 U.S. 343, 349, 352 (1959). An "agent's interpretations and impressions" of a witness do not fall within the purview of the Jencks Act. Id. at 352-53.

2.    Discussion

The statements in the above-described reports are not statements of any of the government's witnesses and therefore cannot be used for impeachment and should not be read aloud or shown to the jury. "A witness may only be impeached by his or her own statements, see Fed. R. Evid. 613(b), not notes made by other parties about what they said, unless the witness has adopted or approved those notes." United States v. Romanello, 22-CR-194 (EK), 2023 WL 8283435, at *2 (E.D.N.Y. Nov. 27, 2023) (granting motion to preclude use of agent reports of witness interviews to impeach witnesses); see also United States v. Leonardi, 623 F.2d 746, 757 (2d Cir. 1980) ("[T]he written statement of [an] FBI agent was not attributable to the [interviewee].")). The Court should therefore preclude defense counsel from quoting, publishing or suggesting to the jury in any way that the content of an agent report constitutes a statement of the witness.

30

In accordance with Federal Rule of Criminal Procedure 26.2 and 18 U.S.C. § 3500, the government will produce summaries of witness interviews prepared by law enforcement.   Law enforcement reports summarizing investigators' interviews with government witnesses were not reviewed or adopted by any of the government witnesses, nor do they constitute verbatim recitals or transcripts of any of the witnesses' statements.[10]   As a result, the statements in these reports are not statements of any of the government's witnesses (other than the reports' authors, if called to testify at trial), cannot be used for impeachment, and should not be read aloud or shown to the jury.   See Almonte, 956 F.2d at 29; Leonardi, 623 F.2d at 757.   The Court should therefore preclude any use or suggestion by defense counsel that a statement in a law enforcement summary report is a statement of the witness being interviewed.[11]

VIII.     Self-Authenticating Records Are Admissible Without a Custodial Witness

In the event the parties do not reach stipulations as to authenticity and admissibility, the government will move to admit two categories of evidence through certification rather than custodial witnesses—namely, business records and the forensic extractions of cellular telephones—pursuant to Rule 902(11) (certified domestic records of a regularly conducted activity), (13) (certified records generated by an electronic process or system), and (14) (certified data copied from an electronic device, storage medium or file).

---

[10]     These reports would, however, constitute prior statements of the agents or officers who prepared the report if they are called as a witness to testify regarding the subject matter contained in the report.

[11]     The government acknowledges that the defendant may ask a witness whether he or she made a statement that is reflected in a law enforcement report.   However, if the defense is not satisfied with the witness's answer, the defense may not publish or introduce the report's contents as a prior inconsistent statement.   Additionally, if a witness says that he or she does not remember a fact, the defense may attempt to refresh a witness's recollection by showing the witness the report, but only if the defense does so in a manner that does not imply that the report is the witness's own statement or publish its contents to the jury.

31

1.      Applicable Law

Federal Rule of Evidence 901(a) requires the proponent of a piece of evidence to "produce evidence sufficient to support a finding that the item is what the proponent claims it is"—to authenticate or identify the item.   "The bar for authentication of evidence under [Federal Rule of Evidence] 901(a) is 'not particularly high.'"   United States v. Bout, 651 Fed. App'x 62, 63 (2d Cir. 2016) (quoting United States v. Gagliardi, 506 F.3d 140, 151 (2d Cir. 2007)). "It is met where 'sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification.'"   Id. at 63-64 (quoting United States v. Tin Yat Chin, 371 F.3d 31, 38 (2d Cir. 2004)).

Under Rule 902(11), evidence can be authenticated through a business record certification without the need to call a records custodian as a witness.   This rule was created "so that the foundation requirements of Rule 803(6) [the business records exception to the hearsay rule] can be satisfied under certain circumstances without the expense and inconvenience of producing time-consuming foundation witnesses."   United States v. Komasa, 767 F.3d 151, 155 (2d Cir. 2014).   Business records can be authenticated by certification if: (1) the records were "made at or near the time by—or from information transmitted by—someone with knowledge"; (2) the records were "kept in the course of a regularly conducted activity of a business, organization, occupation, or calling"; and (3) "making the record[s] was a regular practice of that activity."   Fed. R. Evid. 803(6).   Admitting business records that have been authenticated by affidavit or certificate does not violate a defendant's rights under the Confrontation Clause because the records are not testimonial.   See Melendez-Diaz v. Massachusetts, 557 U.S. 305, 324 (2009) ("Business and public records are generally admissible absent confrontation . . . because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial.").

32

Federal Rules of Evidence 902(13) and (14) provide a mechanism for parties to authenticate evidence generated by electronic processes or systems. Specifically, Rule 902(13) allows authentication by certification of "[a] record generated by an electronic process or system that produces an accurate result," and Rule 902(14) does the same for "[d]ata copied from an electronic device, storage medium, or file, if authenticated by a process of digital identification." Among these records are forensic images of cellular telephones. United States v. Forney, No. 24-CR-146 (KAM), 2025 WL 2208298, at *17 (E.D.N.Y. Aug. 4, 2025) ("Data extracted from a cellular telephone may be self-authenticated under Rule 902(14)."); see also United States v. Terranova, 750 F. Supp. 3d 15, 33 (E.D.N.Y. 2024) (permitting authentication of cellphone extraction without live testimony); United States v. Otufale, 740 F.Supp.3d 233, 249 (E.D.N.Y. 2024) (permitting the authentication of electronic records through custodian certifications under Rule 902(13)); United States v. Dunnican, 961 F.3d 859, 872 (6th Cir. 2020) (affirming district court's decision to admit text message evidence extracted from defendant's phone as self-authenticating under Rule 902(14)). Excerpts from such records that are generated using standard electronic systems and processes to generate copies for use in discovery and as trial exhibits are examples of data copied from an electronic device, storage medium, or file which may be authenticated by a process of digital identification. Accordingly, these items of electronic evidence can be authenticated, pursuant to Rules 902(13) and (14), by certification of competent technicians who performed the extractions and generated the copies rather than by the live testimony of those technicians.

2.    Discussion

The government moves the Court to permit the authentication of certain evidence through business record certifications, including records from telephone companies, WhatsApp, Jamaica Hospital Medical Center, TikTok, and the New York State Department of Motor Vehicles.

33

Each of these records will be accompanied by a certification from a custodian establishing that such records were made at or near the time by (or from information transmitted by) someone with knowledge, were kept in the course of a regularly conducted activity of the business or entity, and that making the record was a regular practice of that business or entity. See Fed. R. Evid. 803(6); see also United States v. Sackett, 598 F.2d 739, 742 (2d Cir. 1979) (hospital records admissible under Rule 803(6) as business records). Therefore, these records are properly authenticated through business record certifications. See Fed. R. Evid. 902(11). The government has provided the defendants with copies of the relevant certifications currently in its possession, and it will provide any additional certifications upon receipt from the relevant entity.

The government also moves to admit evidence lawfully seized from cell phones belonging to Abu Chowdhury, Syed Rubel Ahmed, and Anzu Khan. The contents of these devices were extracted by members of the FBI's Computer Analysis and Response Team. In lieu of calling multiple FBI witnesses to testify about the process of creating the extractions, the government may introduce this evidence using certificates under Rule 902(13) and Rule (14).[12] Excerpts from such records that are generated using standard electronic systems and processes to generate copies for use in discovery and as trial exhibits are examples of data copied from an electronic device, storage medium, or file which may be authenticated by a process of digital identification. Accordingly, the government requests a ruling permitting the government to admit

---

[12] In the first instance, the government intends to meet and confer with defense counsel to stipulate to at least the authenticity of evidence from the relevant cell phones, and the government would propose to introduce evidence from those cell phones through a publication witness. See infra § IX. If the defendants are unwilling to stipulate, the government would seek to admit the evidence through a Rule 902 certification as described above and publish it to the jury through a publication witness. If the Court is not inclined to permit the government to offer this evidence through a publication witness, the government will admit and public the evidence through the relevant FBI forensic technicians for each phone.

34

electronic evidence authenticated by certification of a competent technician who performed the extraction and generated the copies rather than by live testimony.

IX.    The Government Will Seek to Present Evidence to the Jury Through a Publication Witness

The government seeks to present certain pieces of evidence through a publication witness at trial.   The publication witness would read from exhibits that are already admitted into evidence, either pursuant to the business records exception in Federal Rules of Evidence 902(11) or (12) or through relevant testimony from a corresponding records custodian.   The use of a publication witness in this manner is legally proper and commonly used by the government to present its case-in-chief in an efficient and digestible manner to the jury.

1.    Applicable Law

Publishing admitted written evidence by reading it aloud verbatim is both permissible and a commonly employed process.   Courts that have considered the issue have repeatedly upheld this method of publication.   In United States v. Tragas, 727 F.3d 610, 614-15 (6th Cir. 2013), for example, the Sixth Circuit rejected the defendant's argument that having a law enforcement agent and a prosecutor read aloud online chat conversations "interpreted and characterized the otherwise properly admitted documentary evidence and portrayed the [d]efendant's written communications in a way that telegraphed to the jury that she was guilty." In Tragas, the defendant also claimed there that "by merely reading the transcripts aloud, the prosecutor and [case agent] essentially play acted the chat conversations, with the prosecutor 'performing' the role of Defendant, and [case agent] playing various co-conspirators."   Id. at 614. The Tragas court also rejected that argument, observing that there was "nothing inherently problematic about reading such evidence to the jury," and reasoning: "[a]s long as the evidence itself is properly admitted pursuant to the Rules of Evidence and does not run afoul of other safeguards like the Confrontation Clause, we do not see how a defendant could be prejudiced if

35

the evidence is read aloud to the jury."  Id.; see also United States v. Menendez, 793 F. Supp. 3d 511, 560-61 (S.D.N.Y. 2025) (finding that it was proper for the prosecutor to ask the agent to read several text messages aloud, to identify the date a specific message was sent and to compare that to the date of another document that had already been properly admitted into evidence); United States v. Denton, 944 F.3d 170, 185 (4th Cir. 2019) ("[W]e are unaware of any prohibition against a witness reading aloud from properly admitted evidence."); United States v. Allums, No. 15-CR-153 (VSB), 2018 WL 2128372, at *6 (S.D.N.Y. May 9, 2018) (rejecting argument that defendant was entitled to a new trial because transcript was read into the record with a prosecutor reading the questions and a paralegal reading the answers); cf. Bank of Nova Scotia v. United States, 487 U.S. 250, 262-63 (1988) (concluding that two IRS agents' tandem reading of transcripts in grand jury was "not prejudicial" because "[t]here is no evidence that the agents' reading in tandem enhanced the credibility of the testimony or otherwise allowed the agents to exercise undue influence"); United States v. Baker, 923 F.3d 390, 398 (5th Cir. 2019) (agent's testimony "consist[ing] of reading the contents of exhibits and sorting through the evidence to show how the documents related to each other and to the charges in the indictment" was permissible).

Furthermore, courts in this District routinely allow witnesses (whether they be law enforcement witnesses or not) to present admitted documents such as emails and text messages orally to aid the jury's understanding. See McMahon, 2024 WL 896838, at *23 ("[T]he government was entitled to present these texts orally to ensure that the jury actually received and focused on them and in a manner that conveyed the 'evidentiary richness and narrative integrity' of the government's case . . . the existence and substance of the text messages was undisputed, and the oral presentation of the text communications did not so transform the underlying evidence so that it lacked a 'substantial similarity' to its original form.").

36

2.    Discussion

There is no prejudice in the government publishing evidence—already admitted into the record and made available to the jury—by reading it aloud.    Cf. Tragas, 727 F.3d at 615 ("This seems to be a different theory to support Defendant's primary argument that, merely by uttering the words from a document aloud, a prosecutor imbues the evidence with some sort of magical power.").    The government does not intend to elicit any testimony or evidence that would be inconsistent with the prevailing case law through the publication witness.

The government anticipates publishing records that contain unwieldy amounts of data—such as toll records between co-conspirators—or for records that can be published to the jury by a very limited universe of appropriate witnesses, such as the defendants' own statements in text messages to their co-conspirators.    There is no "perform[ance] . . . in any meaningful sense" by the prosecutor or witness simply reading aloud such written evidence.    See id.; see also United States v. Ayala-Vieyra, No. 21-1177, 2022 WL 190756, at *6 (6th Cir. Jan. 21, 2022) ("allowing government personnel to read the stipulated-to transcripts to the jury" is not problematic, though a "staged performance or reenactment" of evidence might be).    The government does not intend to insert dramatics or to stage a performance by publishing records or text messages through the publication witness.

Specifically, the government intends to publish pertinent portions of hundreds of rows of data in phone records, and, based on the publication witness's own training and expertise as a law enforcement agent, explain the meaning of certain terms in those records, such as "call type," "direction," and "subscriber name" to eliminate any potential confusion and to avoid any possibility of jurors guessing the meanings of those terms.    Although the government does not seek as broad a scope for the publication witness's testimony, courts in this district have also allowed publication witnesses to testify beyond reading aloud records, such as admitting testimony

37

and charts that "accurately and reliably summarize[] complex or difficult evidence." 6 Weinstein's Federal Evidence § 1006.04 (2019) (quoting United States v. Kerley, 784 F.3d 327, 341 (6th Cir. 2015)). These charts "may include assumptions and conclusions" where "said assumptions and conclusions [are] based upon evidence in the record." United States v. Wainright, 351 F.3d 816, 821 (8th Cir. 2003). This practice is accepted and proper under the law. See, e.g., United States v. Lasko, 146 F. App'x 530, 532 (2d Cir. 2005) (admitting chart summarizing the defendant's post-arrest statements about his manufacturing of methamphetamine, which was "all based on the [defendant's] testimony to the police"); Yousef, 327 F.3d at 157–58 (telephone summary charts were properly used to highlight patterns of phone calls); see also United States v. Lee, 660 F. App'x 8, 19 (2d Cir. 2016) (summary of calls made and received and subscriber information was admissible); United States v. Ho, 984 F.3d 191, 209 (2d Cir. 2020) (summary chart of timelines of certain text messages, emails, and other documents admitted into evidence was admissible under Rule 1006); United States v. Thiam, 934 F.3d 89, 96 (2d Cir. 2019) (summary chart showing luxury purchases and text messages was admissible because it was "useful to the jury in understanding [the defendant's] motivations for accepting bribes and his consciousness of guilt"); United States v. Goldberg, 401 F.2d 644, 647 (2d Cir. 1968) ("[C]harts and summaries admitted into evidence were constructed exclusively from the testimony of the government's witnesses and from [the company's] voluminous business records, which had been previously admitted into evidence"). The government's request here is narrower than the above-described cases, in seeking to read aloud records already admitted into evidence, and should be granted as a routine and permissible process.

Additionally, the government intends to publish text messages between the defendants and their co-conspirators. The use of a publication witness is sensible because the

38

only potential custodial witnesses are the defendants whose phones were seized or an analyst from the FBI's Computer Analysis Response Team.  Absent conduct that violates evidentiary rules or other relevant law, the government is entitled to present its case in the manner it believes is most appropriate, given that it has the burden of proof.  See, e.g., Old Chief v. United States, 519 U.S. 172, 183-88 (1997) (explaining that a "criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as the Government chooses to present it," based in part on the government's need "for evidentiary richness and narrative integrity in presenting a case").  Particularly where, as here, the evidence involved many pages of written records provided by various entities, and communications of at least four co-conspirators, the government's decision to read select portions to the jury shortly after admission, rather than as part of an hours-long summation, is entirely proper.  The government anticipates displaying the text messages while the publication witness reads the text messages into the record.  Publishing such records this way is also the better mechanism than to wait until a lengthy summation to "ensure that the jury actually receive[s] them and focus[es] on them […]" and because it is "fair for the government to consider whether all jurors ha[ve] the same level of reading ability and comprehension."  McMahon, 2024 WL 896838, at *23 and n. 27.

Therefore, the government respectfully requests that the Court issue a ruling permitting the government to publish the above-described evidence through a publication witness who is not a custodial witness.  If the Court bars the publication of such evidence through publication witnesses other than through a custodial witness, as it did in United States v. Iffat Lubna, the government will present individual custodians for each set of records or type of evidence to publish the exhibits.  For example, if the Court will only permit publication by a custodial witness, the government anticipates calling to the stand at least five additional witnesses

39

including records custodians from: (1) WhatsApp; (2) T-Mobile; (3) Jamaica Hospital, (4) TikTok, and (5) the New York State Department of Motor Vehicles.   In addition, for each cell phone whose contents are admitted, the government will need to call the FBI forensic analyst who performed the phone extraction and/or generated the phone report.   While the government believes that allowing a non-custodial publication witness will promote efficiency in reducing the number of witnesses who will need to testify at trial, the government respectfully seeks a ruling from the Court as to how it wishes to proceed so that, if necessary, the government can begin subpoenaing and preparing the above-mentioned records custodians for testimony.

X.     The Court Should Preclude Evidence and Arguments That Are Irrelevant, Unfairly Prejudicial or Invite Jury Nullification

The Court should preclude the defendant from injecting into the trial impermissible evidence, questioning, testimony, or arguments designed to encourage jury nullification, engender sympathy for the defendant and confuse issues.   Such evidence, questioning, testimony, and arguments are improper and would distract from the only issue properly before the jury: the defendants' guilt or innocence.   They should be precluded.

1.     Applicable Law

Under Federal Rule of Evidence 402, "irrelevant evidence is not admissible" at trial, Fed. R. Evid. 402, and under Federal Rule of Evidence 403, a court may exclude even relevant evidence, "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence," Fed. R. Evid. 403; see also United States v. Miller, 626 F.3d 682, 689-90 (2d Cir. 2010).   A defendant is entitled to present a defense only if it has a foundation in the evidence, see United States v. Kwong, 69 F.3d 663, 667 (2d Cir. 1995), and so long as it does not fail as a matter of law, see United States v. Bakhtiari, 913 F.2d 1053, 1057 (2d

40

Cir. 1990).  If the defense does not have a basis in fact or law, a court should not allow the defendant to present the evidence or advance the argument to the jury.  See United States v. Paul, 110 F.3d 869, 871 (2d Cir. 1997); United States v. Edwards, 101 F.3d 17, 20 (2d Cir. 1996) (holding that a "[d]efendant is not entitled to a jury charge based on a theory that the court properly found to be invalid and irrelevant and hence without foundation") (citation omitted).

Courts have broad discretion to exclude evidence if it has "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403, Adv. Comm. Notes; see United States v. Miller, 641 F. Supp. 2d 161, 167 (E.D.N.Y. 2009) ("District courts have broad discretion to balance the probative value of evidence against possible undue sympathy or bias as well as prejudice.").  Indeed, when evidence is of limited probative value, it should be excluded if it has the "potential to engender sympathy in an inappropriate effort to excuse defendant's commission of the charged offenses."  Miller, 641 F. Supp. 2d at 167; see also United States v. Paccione, 949 F.2d 1183, 1201 (2d Cir. 1991) (affirming preclusion of evidence that defendant had a son with cerebral palsy); United States v. Battaglia, No. 05-CR-774 (KMW), 2008 WL 144826, at *3 (S.D.N.Y. Jan. 15, 2008) (precluding "evidence of Defendant's family and personal status" as not "relevant to the issue of whether Defendant committed the crimes charged"); United States v. Harris, 491 F.3d 440, 447 (D.C. Cir. 2007) (affirming preclusion of evidence designed "mainly to cast [the defendant] in the sympathetic light of a dedicated family man").

Relatedly, a defendant is not entitled to advance an argument or introduce evidence to obtain an acquittal or mistrial through jury nullification.  A defendant's attempt to focus the jury on prejudice or public opinion in coming to a verdict, rather than on the evidence and facts before it, "subverts the jury's solemn duty to 'take the law from the court, and apply that law to

41

the facts of the case as they find them to be from the evidence.'"  See In re United States, 945 F.3d 616, 627 (2d Cir. 2019) (quoting Sparf v. United States, 156 U.S. 51, 102 (1895)).  Trial courts have a duty to forestall or prevent such conduct.  United States v. Thomas, 116 F.3d 606, 614 (2d Cir. 1997) ("We categorically reject the idea that, in a society committed to the rule of law, jury nullification is desirable or that courts may permit it to occur when it is within their authority to prevent"); see also United States v. Trujillo, 714 F.2d 102, 106 (11th Cir. 1983) ("We therefore join with those courts which hold that defense counsel may not argue jury nullification during closing argument"); United States v. Díaz-Colón, 651 F. Supp. 3d 468, 480 (D.P.R. 2023) ("This Court possesses the discretion to block defense attorney's attempts to serenade a jury with the siren song of nullification, and may instruct the jury on the dimensions of their duty to the exclusion of jury nullification") (citation and quotation marks omitted).

Courts have broad discretion to exclude evidence if it has "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403, Adv. Comm. Notes; see United States v. Miller, 641 F. Supp. 2d 161, 167 (E.D.N.Y. 2009) ("District courts have broad discretion to balance the probative value of evidence against possible undue sympathy or bias as well as prejudice.").  Indeed, when evidence is of limited probative value, it should be excluded if it has the "potential to engender sympathy in an inappropriate effort to excuse defendant's commission of the charged offenses."  Miller, 641 F. Supp. 2d at 167.

2.    Discussion

a.    Arguments that John Doe-1 Deserved to Be Kidnapped or Otherwise Punished Should Be Precluded

Based on Razia's post-arrest statement and her counsel's statements to the Court and the government, the government expects that Razia will argue that John Doe-1 deserved to be

42

kidnapped based on his alleged prior behavior, and that she will attempt to introduce evidence of John Doe-1's alleged prior harassment of her.[13]   See ECF No. 94 (Razia Bail Hearing Tr. 12:9-16 ("And we maintain that any sort of physicality here was in my client's own self-defense after their so-called victim grabbed her and pulled her by the hair")); ECF No. 259 (Razia's severance motion describing John Doe-1 as "a prolific publicity-seeking gadfly in the Bengali community" and an "annoying, hateful man"); see also supra § VI.2 (moving to limit cross-examination and related arguments concerning John Doe-1).   Such arguments and evidence are not relevant under Rule 401.   Rather, they are expressly irrelevant under Rule 402.[14]   There is no "he deserved it" defense to the federal kidnapping statute.   Such argumentation or evidence about John Doe-1's purported character or past actions does not pertain to any element of the charged crime, and permitting such arguments or evidence would invite the jury to consider these external factors in their deliberations rather than whether the elements of the crime were proven beyond a reasonable doubt.   That is jury nullification.   Jury nullification, as discussed above, is patently inappropriate.   Such arguments or similar evidence are improper and should be prohibited from introduction at trial.

Similarly, the government has reason to believe that Khan may argue that he threatened and assaulted John Doe-1 because John Doe-1 had disparaged his relative.   For the same reasons, the Court should prohibit this argument or introduction of any related evidence. Khan's purported justification is not a legally appropriate or recognized defense to the charges in

---

[13]     Ahmed's counsel has not indicated that he intends to make such an argument.   However, in her post-arrest statement, Razia claims that Ahmed was a victim of John Doe-1's harassment prior to the kidnapping.   To the extent Ahmed attempts to introduce similar evidence make similar arguments regarding John Doe-1's alleged prior harassment, they should be precluded for the same reasons.

[14]     Even if they were relevant under Rule 401, they would be unduly prejudicial and misleading to the jury under Rule 403 because they would steer the jury away from the relevant evidence and law.

this case.  Additionally, such an argument also invites jury nullification by suggesting that his actions were a permissible reaction to John Doe-1's alleged slander.  To ensure that the jury focuses only on the law and the evidence properly before it, the Court should prohibit the above arguments and evidence that invite jury nullification, misstate the law, and are a waste of time and unfairly prejudicial.  The risk of confusing the jury, wasting the jury's time and causing undue prejudice to John Doe-1 is high with just one of these improper arguments, but a cumulative effect of one or more of these arguments being presented to the jury poses an even greater danger that an improper consideration, such as jury nullification, seeps into the jury's decision-making processes. Therefore, the Court should prohibit any such argument or evidence.

     b.      <u>The Defendant Should Be Precluded from Introducing Evidence or Argument Concerning His Personal Circumstances, Specific Instances of Good Character, or Lack of Criminal History</u>

The defendants should be precluded from admitting evidence of, referring to, or arguing about their personal circumstances, such as their children or families.   <u>See, e.g.</u>, Razia Bail Hearing Tr. at 8:14-17, 12:19) (counsel arguing that Razia was not a flight risk because she is a mother of two children and a wife); Motion to Modify Bail Conditions, ECF No. 125 (Feb. 20, 2024) (referring to defendant's "young children").   Such evidence—whether offered to engender sympathy or to cast the defendants in a positive light—is inadmissible because it is irrelevant. <u>See</u> Fed. R. Evid. 402.  Such topics have no bearing on whether the defendants conspired to kidnap John Doe-1 and kidnapped John Doe-1.  <u>See</u> <u>United States v. Paccione</u>, 949 F.2d 1183, 1201 (2d Cir. 1991) (affirming preclusion of evidence that defendant had a son with cerebral palsy); <u>United States v. Battaglia</u>, 2008 WL 144826, at *3 (S.D.N.Y. Jan. 15, 2008) (precluding "evidence of Defendant's family and personal status" as not "relevant to the issue of whether Defendant committed the crimes charged"); <u>United States v. Harris</u>, 491 F.3d 440, 447 (D.C. Cir.

44

2007) (affirming preclusion of evidence designed "mainly to cast [the defendant] in the sympathetic light of a dedicated family man").

This concern is not speculative.  In the prior trial in this matter, defense counsel mentioned in the first moments of her opening statement that the defendant was the "mother of a 2-year[-]old boy."  United States v. Lubna, No. 23-CR-278, Trial Tr. at 578 (Mar. 25, 2026).  The defendant's child was entirely irrelevant to her guilt or innocence.  The only purpose of such a comment is to engender sympathy for the defendant.[15]

Even assuming, arguendo, such topics had some limited probative value, that value would be far outweighed by the danger of unfair prejudice to the government.  The clear purpose of such testimony would be to distract the jurors from the relevant facts and seek to influence their verdict through sympathy.  Such testimony should be precluded.  See Fed. R. Evid. 403, Adv. Comm. Notes (discussing exclusion to avoid "risks which range all the way from inducing decision on a purely emotional basis, at one extreme, to nothing more harmful than merely wasting time, at the other extreme"); United States v. Malpeso, 115 F.3d 155, 162-63 (2d Cir. 1997) (excluding evidence and precluding argument on issues that had "little or no relevance" to the charged crimes and might encourage jury nullification).  Moreover, based on well-settled case law, any evidence

---

[15]    The opening statement of Lubna's defense counsel also raises a particular problem with allowing references during opening statements to personal of family circumstances. Her opening statement contained personal claims never actually proven at trial.  See, e.g., Lubna Tr. at 578 ("Ever since she was a little girl it was impressed upon Iffat that above all she must maintain a good reputation in order to be respected."); id. ("Iffat fell for Abu. She fell hard."). When a party makes a claim in an opening statement that the evidence ultimately does not support, the opposing party's remedy is to alert the jury to the opposing party's failure to back up that claim. Such a remedy may have the unwanted effect of calling attention to the non-proven facts introduced by the defendant.  Regardless, when the truth of a claim would have required the defendant's testimony, calling out the defendant's failure to prove such information could be perceived as an impermissible infringement on her Fifth Amendment right not to testify. Consequently, the defendant's entirely unsupported opening statement claims may go unchallenged.

or argument concerning the defendants' lack of criminal history is irrelevant unless and until they testify, and even then, it is admissible only for the limited purpose of allowing the jurors to gauge the defendants' credibility.   See United States v. Blackwell, 853 F.2d 86, 88 (2d Cir. 1988). Accordingly, counsel should not be permitted to advise the jury of the defendants' personal circumstances, or specific instances of good character in opening statements, cross examination, or otherwise, and they should only be permitted to discuss a defendant's criminal history if the defendant testifies.

c. The Court Should Preclude References to Potential Punishment<br>and Collateral Consequences

Punishment and other collateral consequences of a conviction are considerations that are irrelevant to the sole issue before the jury—whether the defendant is guilty of the charged offenses.   See Shannon v. United States, 512 U.S. 573, 579 (1994) ("Information regarding the consequences of a verdict is . . . irrelevant to the jury's task.").   Indeed, permitting evidence and argument on this topic may improperly "invite[] [jurors] to ponder matters that are not within their province, distract[] them from their factfinding responsibilities, and creates[] a strong possibility of confusion."   Id.   For these reasons, jurors are routinely instructed not to consider a defendant's potential punishment in determining the defendant's guilt.   See Sand et al., Modern Federal Jury Instructions, Instruction 9-1 (2017 ed.); see also Shannon, 512 U.S. at 579 (a jury "should be admonished to reach its verdict without regard to what sentence might be imposed . . . [and] not to consider the consequences of their verdicts . . . ." (internal citation omitted)); United States v. Heslop, 225 F.3d 647, at *3 (2d Cir. 2000) (summary order) (affirming propriety of instruction that jury must not consider potential punishment); United States v. Watts, 934 F. Supp. 2d 451, 464-65 (E.D.N.Y. 2013) ("[I]t is well-established precedent that jurors should not be informed

46

about the possible consequences of their verdict due to the likelihood that prejudice, unfairness, and confusion [] would result.").

Consistent with the above, the Court should preclude the defendants from referencing possible consequences of conviction, including but not limited to, the defendants' sentencing exposure and any collateral effects on their families. The jury in this case has no role at sentencing, and allowing arguments regarding potential punishment or collateral consequences "invites [jurors] to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion." Shannon, 512 U.S. at 579. In a case such as this, the only purpose for invoking punishment at trial would be an "attempt[] to serenade [the] jury with the siren song of nullification," United States v. Sepulveda, 15 F.3d 1161, 1190 (1st Cir. 1993), which the court has a duty to prevent, United States v. Thomas, 116 F.3d 606, 616 (2d Cir. 1997).

The Court should preclude the defendants from referencing potential punishment and collateral consequences before the jury because they are wholly irrelevant to the defendants' guilt or innocence, yet carry significant risks of nullification.

 XI.    Razia Should Not Be Permitted to Argue Self-Defense

The government expects that Razia may set forth a claim of self-defense at trial. See ECF No. 94 at 12:12-15 (Tr. of Razia Arraignment, January 11, 2024) ("And we maintain that any sort of physicality here was in my client's own self-defense after their so-called victim grabbed her and pulled her by the hair"). Razia should be precluded from making such an argument, as she will be unable to meet the requirements for the Court to provide a self-defense instruction to the jury.

47

1.    Applicable Law

The Court may permit a self-defense instruction if there is evidence, more than a "mere scintilla," upon which the jury could rationally find that the defendant acted in self-defense. United States v. Taveras, 570 F. Supp. 2d 481, 493 (E.D.N.Y. 2008) (citing United States v. Jackson, 726 F.2d 1466, 1468 (9th Cir.1984)).   In Taveras, the Court noted that the requirements justifying a self-defense instruction are defined by common law.  Id. citing United States v. Butler, 485 F.3d 569, 572 n. 1 (10th Cir. 2007).   The doctrine of self-defense provides that,

> [o]ne who is not the aggressor in an encounter is justified in using a reasonable amount of force against his adversary when he reasonably believes (a) that he is in immediate danger of unlawful bodily harm from his adversary and (b) that the use of such force is necessary to avoid this danger.

Wayne R. LaFave, 2 Subst. Crim. L. § 10.4 (2d ed.) (emphasis added).   See also Taveras, 570 F. Supp 2d. at 493 (citing the same).   For a defendant to rely on self-defense, the threat must be immediate, and the defendant cannot be the aggressor.   As the Second Circuit stated, "it has long been accepted that one cannot support a claim of self-defense by a self-generated necessity to kill. The right of homicidal self-defense is denied to slayers who incite the fatal attack."   See United States v. Desinor, 525 F. 3d 193, 199-200 (2d Cir. 2008).

2.    Discussion

The facts of this case, which the government expects to prove at trial, plainly show that Razia fails the requirements set forth in this Circuit for a self-defense instruction.   First, there is absolutely no evidence that Razia could show for the jury to find that she acted in self-defense. By counsel's own admission at arraignment and Razia's post-arrest statement, Razia was on scene for the kidnapping.   The evidence will show that Razia received location information in Queens from co-conspirator Abu Chowdhury as to where her co-conspirators were beating and interrogating John Doe-1 during his kidnapping—that is, she arrived after the kidnapping was

48

already in progress.   Cell site data will show that she arrived at that location and stayed there for a prolonged period of time.   Razia had no other reason to go to that location, but went there voluntarily in the middle of the night.   Although John Doe-1 and Razia had prior conflicts, as described above, John Doe-1 posed no immediate threat to Razia, nor was Razia threatened by any of her co-conspirators in any way if she had refused to go to the location in Queens.   Once she arrived there, however, she not only affirmatively placed herself at the scene of John Doe-1's kidnapping, but also participated in it by beating John Doe-1 herself.   In other words, Razia was the aggressor—disqualifying her from claiming she acted in self-defense, as contemplated by Desinor and Taveras.   While Razia may claim that John Doe-1 struck her first and that she struck him in self-defense, this argument suffers the same flaw that the Second Circuit identified in Desinor—even if John Doe-1 struck Razia (a claim belied by the record), Razia cannot then strike John Doe-1 and kidnap him in self-defense from her own "self-generated necessity" to protect herself.   Therefore, her counsel should not be allowed to argue self-defense in her opening statement and Razia should not benefit from a self-defense instruction at trial.

XII.    Argument Regarding Absent Co-Conspirators Should Be Strictly Limited

Arguments regarding co-conspirators who are not present at this trial should be precluded.   There is no permissible basis for defense counsel to invite the jurors to consider why these defendants are being tried together, why other co-conspirators were not charged, or what the stage any co-defendant's case is in during the trial.   Each of these arguments is irrelevant, misleading, and risks confusing the jury.

1.    Applicable Law

As a preliminary matter, Federal Rule of Evidence 401 classifies evidence as relevant if "(1) it has any tendency to make a fact more or less probable than it would be without the evidence; and (2) the fact is of consequence in determining the action."   Fed. R. Evid. 401;

49

see also Fed. R. Evid. 402 ("Irrelevant evidence is not admissible."); United States v. Inniss, No. 18-CR-134 (KAM), 2019 WL 6999912, at *6 (E.D.N.Y. Dec. 20, 2019).   Federal Rule of Evidence 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."   Fed. R. Evid. 403.

Additionally, an argument regarding the government's decision to charge these defendants and not others amounts to an allegation of selective prosecution and should not be permitted here.   "[T]he selective prosecution defense is an issue for the court rather than the jury," and the defendants have not raised, let alone prevailed on, that issue with the Court.   United States v. Regan, 103 F.3d 1072, 1082 (2d Cir. 1997).   At trial, the government's purported motive in bringing this case has no bearing on the defendants' guilt or innocence.   Instead, the only purpose would be to confuse the issues before the jury, in violation of Fed. R. Evid. 403, and to seek acquittal improperly based on the government's purported decision to charge these defendants and not others.   See, e.g., United States v. Stewart, No. 03-CR-717 (MGC), 2004 WL 113506, at *1 (S.D.N.Y. Jan. 26, 2004) (granting motion to preclude defendant from "presenting arguments or evidence that would invite the jury to question the Government's motives in investigating and indicting [the defendant]"); United States v. Reese, 933 F. Supp. 2d 579, 583-84 (S.D.N.Y. 2013) ("[A] defendant 'may not argue before the jury issues relating to the overall propriety of the Government's investigation in this case.'") (quoting United States v. Demosthene, 334 F. Supp. 2d 378, 380 (S.D.N.Y. 2004)).   These topics are not permissible areas of argument or evidence at trial, and the defendants should be precluded from raising them.

50

2.   Discussion

Arguments about the status of the co-conspirators, or inviting the jurors to speculate as to why Razia, Khan, and Ahmed are being tried together as opposed to with other co-conspirators, are wholly inappropriate.   As the Court is aware, the co-defendants in this case currently are in various pre- or post-trial postures.   Defendants Alom, Shaidhual Chowdhury, and Ruhel Choudhury pleaded guilty and await sentencing.   See Orders dated July 2, 2025, accepting guilty pleas of Alom and Shaidhual Chowdhury and Minute Entry dated March 17, 2026 accepting Ruhel Choudhury's guilty plea.   Defendant Lubna was tried by a jury in March 2026 and was found guilty.   See ECF No. 513.   Defendant Abu Chowdhury is to be tried on September 8, 2026. See Minute Entry dated February 10, 2026.   None of these facts have any bearing on Razia, Khan, or Ahmed's guilt.   There is no reason for the defendants at this trial to make any references or to invite the jurors to speculate as to the status of any co-defendant's case by making either explicit or implicit suggestions about why they are not seated at the defense table at this trial.

Relatedly, the defendants should be precluded from suggesting that their co-defendants are not being tried or otherwise held accountable.   This trial was ultimately severed in the way that Razia, Khan, and Ahmed each requested.   See ECF Nos. 256 (Ahmed Severance Mot.), 258 (Khan Severance Mot.), 259 (Razia Severance Mot.).   Razia and Khan requested to be severed at trial such that they would not be tried with Abu Chowdhury, and Ahmed requested severance to avoid being tried with Lubna and/or Shaidhual Chowdhury.   Accordingly, the defendants should not be allowed to use the outcome of the severance decisions they specifically sought and ultimately received as both a sword and a shield.   Allowing them to seek severance but later suggest to the jury that they are being unfairly prosecuted or singled out, unlike their co-

51

conspirators, is factually wrong and would result in unfair prejudice to the government.[16]   It would also confuse the jury and distract them from their singular goal of assessing properly admitted evidence and determining each defendant's guilt.

XIII.     The Court Should Preclude Evidence or Argument Challenging the Government's Charging Decisions as to the Defendants

The Court should likewise preclude the defendants from offering evidence or argument related to the government's charging decisions as irrelevant and unduly prejudicial. including the government's decision to pursue this investigation federally instead of at the state, the government's motives in charging the case, and the particular defendants that were charged. Such evidence is irrelevant to the defendant's guilt or innocence and presents a substantial risk of misleading the jury.

1.     Applicable Law

The Supreme Court has recognized that "the Government retains 'broad discretion' as to whom to prosecute," Wayte v. United States, 470 U.S. 598, 607 (1985) (citation omitted), and that such decisions implicate complex considerations, Town of Newton v. Rumery, 480 U.S. 386, 396 (1987).   Whether the government's charging decisions should be admitted in evidence requires a case-by-case inquiry into the relevance and probative value of the evidence.   United States v. White, 692 F.3d 235, 245-46 (2d. Cir. 2012).   However, courts have often found that such evidence was insufficiently relevant or probative when it was not "central to the defendant's claim of innocence."   United States v. Ramsey, 2023 WL 2523193, at *6 (E.D.N.Y. Mar. 15, 2023) (precluding evidence of the government's charging decision with respect to a cooperating

---

[16]     Notably, in United States v. Lubna, defense counsel suggested that Abu Chowdhury's absence meant that he was escaping justice, and the Court determined that a curative instruction was necessary to inform the jury that Abu Chowdhury was in fact scheduled to be tried. See Lubna Trial Tr. at 1512 (Apr. 1, 2026).

witness); United States v. Hill, No. 12-CR-214 (KAM), 2014 WL 198813, at *1-2 (E.D.N.Y. Jan. 14, 2014) (excluding evidence of Kings County prosecutor's decision not to charge defendant under Rule 403).

District courts in this circuit also routinely preclude defendants from introducing evidence or eliciting testimony about the government's charging decisions pursuant to Rules 401 and 403.    See, e.g.,    United States v. Naumovski, No. 20-CR-384 (WFK), 2023 WL 5806171, at *3 (E.D.N.Y. Sept. 7, 2023); United States v. Ramsey, No. 21-CR-495 (ARR), 2023 WL 2523193, at *6 (E.D.N.Y. Mar. 15, 2023), aff'd on other grounds, No. 23-7211-CR, 2024 WL 5199288 (2d Cir. Dec. 23, 2024), cert. denied sub nom. Ramsey, Germaine v. United States, No. 24-7292, 2025 WL 2823916 (U.S. Oct. 6, 2025); United States v. Hill, 12-CR-214, 2014 WL 198813, at *2 (E.D.N.Y. Jan. 14, 2014); United States v. Borrero, No. 13 CR. 58 KBF, 2013 WL 6020773, at *2 (S.D.N.Y. Nov. 1, 2013); cf. United States v. White, 692 F.3d 235 (2d Cir. 2012) (rejecting blanket rule excluding evidence of charging decisions, and directing district courts to perform case-by-case analysis, pursuant to Rules 401 and 403, in determining whether to admit evidence of charging decisions).

In United States v. Watts, 934 F. Supp. 2d 451 (E.D.N.Y. 2013), Judge Matsumoto excluded evidence of the government's charging decisions after conducting a fact-based analysis. The defendant moved to cross-examine a government witness who had not been charged in the case about the government's favorable treatment of the witness.    934 F. Supp. 2d at 484.    Judge Matsumoto denied the defendant's motion, holding that the proposed cross-examination would not tend to prove that the defendant was innocent of the charged crimes, "nor otherwise lend weight to his defense."    Id. at 485.    In particular, Judge Matsumoto concluded that, even assuming the witness could also have been charged in the alleged conspiracy, the witness's criminal exposure

53

"would not tend to prove that [the witness], rather than [the defendant], committed the offenses with which [the defendant] is charged, nor otherwise lend weight to his defense.   This is because a conspiracy necessarily involves the agreement amongst more than one actor to engage in criminal conduct for which all members of the conspiracy may be found equally culpable."   Watts, 934 F. Supp. 2d at 485.

        2.    Discussion

Defendants may attempt to make arguments based on (1) whether these charges would have been more appropriately pursued at the state level, and (2) whether additional individuals should have been charged.   These arguments would be inappropriate because they are irrelevant to the defendants' guilt or innocence.   Even assuming there was some marginal relevance, such evidence and argument should be excluded because any probative value would be substantially outweighed by the danger of misleading and confusing the jurors, who could shift their focus from the defendant's guilt or innocence to the government's charging decisions.   See Fed. R. Evid. 403.

First, the government's decision to charge the defendants with a conspiracy to kidnap and the kidnapping of John Doe-1 under the United States Code does not bear on the defendants' guilt or innocence or any potential defense at trial.   Even if it were somehow relevant (it is not), evidence or argument on this issue—including evidence of how the government has charged or not charged other kidnapping cases—would plainly confuse and mislead the jury.

In addition, courts have consistently held—and often give jury instructions reflecting—that arguments regarding the government's motives in bringing charges are irrelevant and unduly prejudicial.   See, e.g., United States v. Farhane, 634 F.3d 127, 167 (2d Cir. 2011) (affirming district court's ruling precluding defendant from arguing in summation that government had improperly targeted him for prosecution); United States v. Loera, No. 09-CR-466 (BMC),

2018 WL 2744701, at *6 (E.D.N.Y. June 7, 2018) (precluding defense arguments to the jury that government's motives were improper).

The present case was investigated by the Federal Bureau of Investigation ("FBI"). Possible explanations as to why the prosecution was brought in federal court as opposed to a state criminal court make no fact of consequence more or less probable.    See Fed. R. Evid. 401(b). Such argument would be highly misleading here, where the District Attorney's Office has not declined to prosecute and indeed, barring considerations of Double Jeopardy, could still prosecute the defendant.    Thus, the Court should preclude the defendants from offering evidence or argument concerning the government's charging decisions, including its decision to pursue this case in federal court.

XIV.    The Defendant Should Be Ordered to Disclose Discovery, Witness Lists, and Trial Exhibits

The defendant must disclose documents that he intends to introduce at trial to affirmatively support his theory of the case, and the government requests that the Court order the defendant to abide by Rules 16(b) and 26.2 of the Federal Rules of Criminal Procedures and to produce any defense exhibits no later than two weeks prior to the start of the trial.

1.    Applicable Law

Rule 16(b) of the Federal Rules of Criminal Procedure requires a defendant to provide the government with documents and records that the defendant "intends to use . . . in the defendant's case-in-chief at trial." Fed. R. Crim. P. 16(b)(1)(A).  Rule 16 does not require a defendant to disclose documents he intends to use for purposes of cross-examining a government witness.  However, Rule 16 does encompass a document the defendant seeks to admit into evidence to affirmatively support his theory of the case, even if he intends to admit such document while cross-examining a witness during the government's case in chief.

55

As explained in United States v. Hsia, 98-0057 (PLF), 2000 WL 195067, at *2 (D.D.C. Jan. 21, 2000):

> A "case-in-chief" is defined as "[t]he part of a trial in which a party presents evidence to support its claim or defense." Black's Law Dictionary 207 (7th ed. 1999). Defendant's cross-examination of government witnesses, and the evidence introduced during that cross-examination, certainly may be used to support her defense . . . . The cross-examination of these and other government witnesses therefore is properly seen as part of defendant's case-in-chief if it buttresses her theory of the case.

Id. The Hsia court distinguished documents introduced by a defendant via a government witness—which do fall within Rule 16 and should be disclosed—from documents used by a defendant "merely to impeach a government witness, and not as affirmative evidence in furtherance of [the defendant's] theory of the case, it is not part of [the defendant's] case-in-chief." Id. at *2 n.1.

Courts in this district have repeatedly held that the defendant must produce in advance any "exhibit that will not be used solely for impeachment purposes," even if the defendant intends to introduce such exhibit during cross-examination of a government witness. United States v. Aguilar, 20-CR-390 (ENV), 2024 WL 3629471 (E.D.N.Y. July 15, 2024), (ordering defendant to "disclose any documents he intends to use in his case-in-chief, including any exhibit that he intends to use during cross-examination of a government witness, where such exhibit with not be used solely for impeachment, no later than two weeks prior to the start of trial."); United States v. Smothers, No. 20-CR-213 (KAM), 2023 WL 348870, at *22 (E.D.N.Y. Jan. 20, 2023); United States v. Napout, No. 15-CR-252 (PKC), 2017 WL 6375729, at *7 (E.D.N.Y. Dec. 12, 2017) (holding that "Rule 16 requires Defendants to identify all non-impeachment exhibits they intend to use in their defense at trial, whether the exhibits will be introduced through a government witness or a witness called by a Defendant"). That obligation extends to material produced by

56

the government in discovery that the defendant intends to use as an exhibit.  See Aguilar, 2024 WL 3629471, ECF No. 362 at 26 (requiring production of defense exhibits "without regard to whether the exhibit was produced by the government in discovery"); Smothers, 2023 WL 348870, at *22 (requiring advance production of defense exhibits "regardless of whether such an exhibit is in the defense's sole custody").  Federal Rule of Criminal Procedure 26.2 also requires the defendant to produce for any defense witness "any statement of the witness that is in their possession that relates to the subject matter of the witness's testimony."  Such statements are customarily produced at least two days before a defense witness testifies.  See, e.g., United States v. Fox, No. 23-CR-227 (NGG), 2025 WL 2076664, at *23 (E.D.N.Y. July 23, 2025) (granting government motion in limine requiring defendant to produce Rule 26.2 materials "no later than two days before a given witness's testimony"); United States v. Ayers, No. 20-CR-239 (BMC), 2024 WL 1158686, at *15 (E.D.N.Y. Mar. 18, 2024) (same).

    2.    Discussion

To date, the defendants have not disclosed any documents that they intend to introduce at trial.  Accordingly, to avoid gamesmanship, unfair surprise, and undue delay, the government respectfully requests that the Court order the defendants to identify any exhibits they intend to introduce during the government's case (i.e., not those documents to be used for impeachment purposes only) or any defense case no later than two weeks prior to the start of the trial.

Moreover, the government respectfully submits that to avoid delay in the upcoming trial, the Court should set a schedule for disclosure of the statements of any defense witnesses other than the defendant himself.  See Fed. R. Crim. P. 26.2.  The government proposes that Rule 26.2 material should be provided no later than two days before any defense witness testifies.

57

## **CONCLUSION**

For the reasons set forth above, the government respectfully submits that the

Court should grant the government's motions in limine.

Dated: Brooklyn, New York
     May 1, 2026

          Respectfully submitted,

          JOSEPH NOCELLA, JR.
          United States Attorney
          Eastern District of New York

                /s/
          Stephanie Pak
          Vincent Chiappini
          John Vagelatos
          Assistant U.S. Attorneys
          (718) 254-7000

cc:    Clerk of the Court (NRM) (by ECF)
       All counsel of record (by ECF)